The Chicago and Erie Railroad Company
*v.* Lee, Administrator.

[No. 2,095.    Filed March 12, 1897.]

Railroads.—*Defective Roadbed.*—*Complaint.*—A complaint against a railroad company seeking to recover for the death of an employe caused by the negligence of the company in maintaining its track and roadbed in an unsafe condition, must aver that deceased was ignorant of the unsafe condition of the roadbed.  *p. 218.*

Chicago and Erie Railroad Company *v.* Lee, Administrator.

SAME.—*Negligence.— Knowledge of Defective Roadbed.—Complaint.* In an action against a railroad company for the death of an employe caused by the negligence of the company in permitting signal wires to remain across the track, unboxed, between which wires the foot of intestate became fastened while he was in the act of making a coupling, a complaint alleging that "the wires were so small and so near the ground that they were not perceived by decedent before he was caught thereby, and that he was ignorant of the danger, and that it was not to him apparent," does not sufficiently aver a want of knowledge of the defect.   *pp. 218, 219.*

EVIDENCE.—*Opinion of Witness as to How Accident Occurred.—Demonstration in Presence of Jury.*—The statement of a witness of how he at some other time had concluded that an accident must have happened, accompanied by a demonstration in the presence of the jury is not admissible.   *pp. 220-222.*

SAME.—*Repairs Made After Injury.*—Evidence of repairs made after the injury is not admissible to show prior negligence.   *pp. 222-224.*

From the Huntington Circuit Court. *Reversed.*

*W. O. Johnson* and *Kenner & Lesh,* for appellant.

*J. C. Branyan, J. S. Branyan, W. H. Hart* and *J. J. Hart,* for appellee.

ROBINSON, J.—Appellee, as administrator of the estate of one Sloan, brought this action to recover damages for the death of said Sloan, caused by the negligence of appellant. A demurrer to the complaint was overruled and the cause put at issue by the general denial. Appellant moved for judgment in its favor upon the special verdict, which was overruled, as was its motion for a *venire de novo.* Upon motion, judgment was rendered upon the special verdict in favor of appellee, after which appellant's motion for a new trial was overruled.

The complaint is in one paragraph and alleges, in substance, that on the day of the accident the decedent was in the employ of appellant as a brakeman; that on said day, while in his line of duty, while attempting to make a change of link in one of the cars,

preparatory to making a coupling of the cars, his foot was caught between one of the ties on said road and two wires running parallel with and close thereto, which wires are sometimes called signal wires, and were there placed by appellant, running from the interlocking switch to the tower house or to the home semaphore; that the wires were used by appellant as an appliance in making switches or switching its trains; that decedent's foot being so caught in said wires and held fast so that it was impossible for him to extricate the same, and the train being moved backward, threw him upon the track and the cars passed over his body, killing him instantly; that the appellant was "guilty of negligence in this: that it allowed said wires for two weeks after the same had been there placed, running under the rails of its road and parallel with the ties, to remain unboxed or uncovered, and liable at any time to trip or catch its employes and hold them fast until the train there moving would crush them; plaintiff further avers that the defendant and its superior officers well knew that the same was a dangerous appliance, and that the wires being so small and so near the ground, that they were not perceived by decedent before he was caught thereby, and that he was ignorant of the danger, and it was not to him apparent, and that he was, in all that he did in the premises, wholly free from fault, and that his death resulted from the negligence and carelessness of the defendant in not providing for the boxing and covering of said wires." It is further averred that the decedent, at the time of his death, was twenty-two years old, of vigorous health, of temperate and industrious habits, capable of earning $65.00 per month, and was in line of promotion where he could earn from $100.00 to $125.00 per month; that

plaintiff was duly appointed administrator, and that decedent left as his only heir, his widow..

We have set out, in the words of the complaint, all the allegations it contains on the question of the negligence of appellant, and freedom from fault on the part of the decedent.

It is earnestly argued, and at great length, that 'these allegations do not show that the decedent was without fault and that appellant was guilty of negligence, but that the complaint discloses contributory negligence on decedent's part.

Much of appellant's brief on the demurrer to the complaint is directed to a defect in the complaint as it originally appeared in the transcript, but which was afterwards corrected by a writ of *certiorari.*

The complaint seeks to recover for the death of an employe caused by the negligence of the appellant in maintaining its track and roadbed in an unsafe condition, and it must aver that the decedent was ignorant of the unsafe condition of the roadbed. In such a case, the usual allegation that the decedent was free from fault is, in itself, insufficient. If the decedent had notice of the defect or dangerous condition of the track at that place, and voluntarily continued in the service, he assumed the increased risk and waived any claim upon the employer for damages. *Louisville, etc., R. W. Co.* v. *Sandford,* 117 Ind. 265.

It is argued by appellant's counsel that the allegations of the complaint do not show that the decedent had no knowledge of the defect; while counsel for appellee contend that the allegations "that the wires were so small and so near the ground that they were not perceived by the decedent before he was caught thereby, and that he was ignorant of the danger, and it was not to him apparent," are equivalent to saying

that the decedent had no knowledge of the defect in the roadbed when injured.

Applying the rule that a pleading must be construed most strongly against the pleader, we are inclined to believe the complaint is insufficient. It is not clear whether the pleader intends to say that the decedent was ignorant of the danger of going in front of a moving car, near a defect in the track, to arrange for a coupling, or whether he intended to say that the defect itself was a dangerous place, and that he had no knowledge of such danger. Appellee's right to recover rested upon the fact that the decedent did not know of the defective and dangerous condition of the roadbed at that particular place, at the time he was killed. He might have known that the defect existed and still have been ignorant of any danger in attempting to make a coupling as the train passed over it. We think that upon this very essential element in appellee's cause of action the complaint should be free from any ambiguity.

It is true that the employer is not an insurer of the employe's safety, nor is he bound to furnish a place that is absolutely safe, but he is required to use reasonable care, skill, and diligence, and to provide a reasonably safe place for his employes to work. *Louisville, etc., R. W. Co.* v. *Corps*, 124 Ind. 427, 8 L. R. A. 636; *Lake Shore, etc., R. W. Co.* v. *Stupak*, 123 Ind. 210; *Taylor,* v. *Evansville, etc., R. R. Co.*, 121 Ind. 124, 6 L. R. A. 584; *Evansville, etc., R. R. Co.* v. *Duel*, 134 Ind. 156; *Pennsylvania Co.* v. *Whitcomb*, 111 Ind. 212; *Krueger* v. *Louisville, etc., R. W. Co.*, 111 Ind. 51; *Louisville, etc., R. W. Co.* v. *Buck*, 116 Ind. 566, 2 L. R. A. 520; *Cincinnati, etc., R. W. Co.* v. *Lang*, 118 Ind. 579.

The complaint in an action of this kind must show that the appellant had made such a change in its roadbed as that it was guilty of actionable negligence in

not providing its employes with a reasonably safe place to work; and that the decedent was not only free from any fault which proximately contributed to his death, but, also, that he had no knowledge of the defective and dangerous condition of the roadbed at the time he was killed.

The demurrer to the complaint should have been sustained.

But, if it were conceded that the complaint is sufficient, the cause must be reversed for other errors.

One of the causes assigned for a new trial was the admission of the opinion of the witness, Waymack, as to how the accident happened, allowing the witness to relate the experiment he claimed to have made at the excavation, and permitting him to demonstrate by physical maneuvers, in the presence of the jury, the manner in which, in his opinion, it might have happened.

The appellee based his right to recover in this case upon the fact that the excavation and wires across the roadbed caused the decedent to fall in front of a moving car, which, in consequence, ran over and killed him. He was seen to go in front of the car to arrange the coupling, but no one saw him after that until after the cars had run over him. An employe of appellant, Fred Waymack, was called as a witness by appellee. He testified that decedent "was in the act of placing this link in the drawbar to make the coupling on the rear end of the train, and that was the last I saw of him until I saw a signal from Heavy which warned me that there was something wrong, and when I arrived there, I saw him under the train, killed." He further testified, "The last time I saw him he had reached across to the end sill to get a link off of the end sill of the car, and place it in the drawbar, and then, when he got in there behind, and the cars were

moving, I failed to see him. Ques. You failed to see him any more? Ans. Yes, sir. Ques. You didn't see the man fall at all, did you? Ans. No, sir. * * * * Ques. Just how he fell, you can't tell anything about it? Ans. No, sir." The witness further said he did not see him step in the trench.

It seems that this witness had demonstrated at the scene of the accident, immediately after it occurred, how the decedent must have fallen, judging from footprints and other marks on the ground; that he got down on the ground and placing his foot in the trench where there was a footprint recently made, he illustrated by movements of his limbs and body how it appeared the accident must have happened. And over an objection and exception by appellant the witness gave the same illustration and demonstration in the presence of the jury.

It is argued that the reproduction in the presence of the jury of this experiment, made at the place of the accident, was simply the opinion of the witness as to how the accident occurred, and that its admission was error. We agree with counsel that the admission of this illustration and experiment was error.

Counsel for appellee, in their brief, offer nothing in support of this ruling, except the following: "this witness [Waymack] had testified that he saw Sloan caught in the wires, fall, and saw him killed, and that immediately he had made an examination in the trench and saw the track and he was asked simply to detail to the jury how it occurred. Had he not been there at the time of the accident and had he come up to the place at a time remote from its happening, the testimony, of course, would be incompetent."

In view of the evidence of the witness himself, that he did not see the decedent step into the trench containing the wires, and did not see him fall, we are un-

able to see how the evidence complained of could be competent. It was an illustration to the jury by the witness of how he had, at a former time, showed to others what his opinion then was as to the nature of the accident, and was equivalent to a statement by the witness of what he had stated out of court as his opinion concerning the accident. The witness could testify to what he actually saw, and as to any footprints or other marks on the ground, and as to measurements made in reference to such footprints and marks; and when these known facts were placed before the jury, it was a question for the jury to say where he did step and how he fell and was killed. We do not think the demonstration complained of falls within the line of demonstrative evidence. It was the duty of the jury to arrive at a conclusion as to how the death actually occurred. The statement of the witness of how he, at some other time, had concluded the accident must have happened, accompanied by the demonstration in the presence of the jury, was improperly admitted. It cannot be said that the admission of such evidence was not prejudicial.

Certain witnesses were permitted, over objection and exception by appellant, to testify that, after the accident, the trench containing the wires was covered.

This evidence was not admissible. It could not have been admissible for the purpose of tending to show that appellant had notice of the defect, for it is not denied that the trench and wires were placed in the roadbed by appellant. It did not tend to show antecedent negligence on appellant's part. Whether there had been a negligent discharge of duty on appellant's part must be determined from what appellant did, or neglected to do, prior to the accident, and not what was done afterwards. The only effect such evidence could possibly have, would be an admission

of previous neglect of duty. If the making of subsequent repairs is to be construed as an admission of prior negligence, the law would then virtually hold out an inducement for continued negligence.

In reversing the case of *Terre Haute, etc., R. R. Co.* v. *Clem*, 123 Ind. 15, because of the admission of such evidence, the court said: "To declare the evidence competent is to offer an inducement to omit the use of such care as the new information may suggest, and to deter persons from doing what the new experience informs them may be done to prevent the possibility of future accidents. The effect of declaring such evidence competent is to inform a defendant that if he makes changes or repairs, he does it under penalty; for, if the evidence is competent, it operates as a confession that he was guilty of a prior wrong.   *   *   * It is unjustly reversing the presumptions to hold that such an owner improves, or repairs, because he was, at some time anterior to the time of making the improvements or repair, guilty of an actionable wrong. True policy and sound reason require that men should be encouraged to improve, or repair, and not be deterred from it by the fear that if they do so their acts will be construed into an admission that they had been wrongdoers. A rule which so operates as to deter men from profiting by experience, and availing themselves of new information has nothing to recommend it, for it is neither expedient nor just." *Board, etc.*, v. *Pearson*, 129 Ind. 456; *Nalley* v. *Hartford Carpet Co.*, 51 Conn. 524; *Dale* v. *Delaware, etc., R. W. Co.*, 73 N. Y. 468; *Hudson* v. *Chicago, etc., R. W. Co.*, 59 Ia. 581, 13 N.W. 735; *Morse* v. *Minneapolis, etc., R. W. Co.*, 30 Minn. 465, 16 N.W. 358.

The court erred in overruling appellant's motion to strike out the evidence of repairs made subsequent to the time of the accident.

Counsel for appellant have argued other alleged errors based upon the special verdict. An essential part of the verdict must necessarily be a finding by the jury upon facts which were inquired about in this inadmissible evidence. What weight that evidence may have had with the jury in their deliberations upon the verdict, or whether it had any weight, cannot be determined. If a part of the evidence which went to the jury upon the material issues in the case was inadmissible, it is not necessary for us to inquire into the sufficiency or insufficiency of the special verdict which was based upon all the evidence given in the cause.

We cannot say that the admission of this evidence was harmless error, nor can we say that it did not influence the jury.

Judgment reversed, with instructions to sustain the demurrer to the complaint.