## LAKE ERIE AND WESTERN RAILROAD COMPANY *v.* SCOTT, ADMINISTRATRIX.

[No. 12,042. Filed April 23, 1925. Rehearing denied June 30, 1925.]

1. EVIDENCE.—*Whether declaration is spontaneous is controlling in determining whether it is res gestae.*—In determining whether the statement of a person is *res gestae*, the spontaneity of utterance of the declaration is of controlling force, and if the circumstances surrounding the declaration are such as to give time or opportunity for deliberation, it loses its element of spontaneity and constitutes a declaration of a past fact and not a verbal act of the present. p. 361.

2. EVIDENCE.—*Declarations as to how injuries were received held inadmissible as res gestae.*—Declarations of a person as to how he received his injuries caused by being thrown from a wagon while driving across a railroad *held* inadmissible as *res gestae* where, at some uncertain time after the injury, he

was found at the side of the track groaning and in a dazed condition, but was able to give specific directions as to calling his wife and physicians and from ten to thirty minutes elapsed thereafter before the declarations were made.   p. 361.

3.   APPEAL.—*Trial court's decision as to admissibility of res gestae declarations not final, but may be reviewed on appeal.*—Trial court's decision as to admissibility of declarations as *res gestae* is not final, but is subject to review on appeal.   p. 363.

4.   EVIDENCE.—*Admissibility of res gestae declarations is for the court.*—Admissibility of *res gestae* declarations is for the court and not for the jury, and it is error for the court to leave it to the jury to determine whether they shall be considered. p. 363.

5.   EVIDENCE.—*Photographs of railroad crossing made subsequent to an accident and after repairs and improvements had been made inadmissible.*—Photographs of the condition of a railroad crossing made subsequent to an accident and after repairs and improvements have been made are not admissible. p. 364.

6.   EVIDENCE.—*Evidence as to condition of railroad crossing subsequent to accident and after repairs and improvements had been made not admissible.*—Evidence as to the condition of a railroad crossing subsequent to an accident thereat and after repairs and improvements had been made are not admissible. p. 364.

7.   RAILROADS.—*Negligence in maintaining highway crossing not determined from the fact that repairs had been made thereon.*—Whether railroad company had been negligent in failing to keep a highway crossing in proper condition is to be determined from its condition at and prior to an accident thereat and not from repairs made thereon thereafter.   p. 364.

From Laporte Circuit Court; *John C. Richter,* Judge.

Action by Nellie Scott, administratrix, against the Lake Erie and Western Railroad Company.   From a judgment for plaintiff, the defendant appeals.   *Reversed.*   By the second division.

*John B. Cockrum, Harry B. Tuthill, Walter C. Williams, Andrew J. Hickey, Norman F. Wolfe* and *John B. Dilworth,* for appellant.

*Robert H. Moore, Lemuel Darrow, Earl Rowley* and *C. V. Shields,* for appellee.

NICHOLS, J.—Action by appellee to recover damages for injuries alleged to have been sustained by her decedent, John Scott who was her husband, such injuries being sustained on August 29, 1922, because of appellant's alleged negligence in the maintenance of its side tracks at the intersection of two streets in Michigan City.

The first paragraph of complaint alleged, in substance, that neither of the two streets involved is paved; for ten days prior to the accident, appellant carelessly and negligently allowed a large rut or hole to form in the ground in the traveled portion of the street between the ties of its tracks, which tracks extended four or five inches above the surface of the street; the hole was approximately a foot deep on the north side of the tracks, and in such close proximity thereto that it caused a step-off of approximately eighteen inches; by reason of the fact that the tracks extended above the surface of the earth, and by reason of the close proximity to the tracks, travelers approaching from the south and crossing the intersection with horses and wagons were unable to see said hole so negligently permitted to be formed and remain; on or about August 29, 1922, the decedent drove a team of horses hitched to a wagon upon the intersection and, being unable to see the rut, hole or gully, as he was crossing the street, when the wheel of his wagon dropped into the hole so negligently maintained and threw him out; causing him to fall beneath the wheels of his wagon, frightening the horses, causing them to lunge forward, and a wheel of the wagon ran over his neck and broke it; from which injuries, he died on October 20, 1922.

The second paragraph was substantially the same as the first. There was an answer in denial and a trial by jury which resulted in a verdict for appellee, on

which, after appellant's motion for a new trial was overruled, judgment was rendered. The error relied on in this court is the court's action in overruling the motion for a new trial.

Appellant first presents the question of the admissibility of certain declarations of Scott as *res gestae.* It appears by the evidence of Hilda Ruetz that she lived near the place where the accident was alleged to have occurred. Her mother, who was sick in the front bedroom of witness' home, heard groaning and called her. She was in the kitchen at the west end of the house, and she then came from the kitchen, through the dining room, to the front room, and out onto the porch and heard moaning, walked down the side walk to the south and saw Scott lying there, about 100 feet from the front of her house, and went to him. She asked him what she could do for him, and he mentioned three doctors' names and told her to call any one of them, she then asked him his name, which he gave and gave her also his telephone number, and asked her to call his wife. She picked up some money off the ground and told him she had it; he asked her to keep it, which she did, until his brother-in-law arrived, to whom she gave it. As soon as she returned to her home, she called Mrs. Scott, the wife, and then called Doctor Wilson. When the doctor came, not over twenty minutes later, he left his car a block away and walked over. Scott's brother-in-law, Mr. Jensen, arrived about five minutes after the doctor arrived. She understood from Scott that he did not wish her to call his son as he had been in the hospital.

Mrs. Scott testified that she received the telephone call from Mrs. Ruetz stating that her husband was hurt, and then telephoned her brother, who was a motorcycle policeman, to go over and investigate. She lived about two miles from the place of the accident, and her brother probably a mile therefrom.

Walter Jensen testified that he was at home when he received the telephone call from his sister. His home was about fifteen blocks from the place of the accident. When he arrived, he rode down the sidewalk in the sand as far as he possibly could, killed the motor, jerked it on the sand, and ran the rest of the way. He left the motorcycle possibly thirty feet west of the intersecting street.

William Westfall testified that when he arrived he saw Scott lying on the ground and heard him say "I am hurt." When he arrived, one Schultz was the only one there, and the brother-in-law arrived five or ten minutes later.

Fred Aicher testified that when he arrived where Scott lay, Schultz and Westfall were holding him. He was there about five minutes and then went over to the house that they were constructing, and doctor Wilson did not arrive until after he got to the house. The place where Scott was lying was about forty or fifty feet east of the east line of the street, and about 100 feet north of the railroad.

Jensen testified that when he arrived, he spoke to Scott and received no response and spoke again; that he was in a dazed condition. Jensen spoke in a medium tone of voice and Scott could hear and rolled up his eyes and answered. The witness was then permitted to testify, over the objection of appellant, that Scott said, in answer to the witness' question, that his neck hurt, and that he got jarred off the wagon at the tracks.

The doctrine of *res gestae* has presented a question most difficult to determine, and, as it seems to us, it would be better if the courts in determining its 1, 2. application could be left primarily to the circumstances of the case under consideration rather than to controlling precedents. Whether or not there was spontaneity of utterance in the declarations

sought to be given in evidence is of controlling force. If the circumstances surrounding the declaration are such that there is time or opportunity, for the formation of the declaration, it, of necessity, then loses its element of spontaneity and the declaration must then be held to be that of a fact of the past and not the verbal act of the present. Of the numerous cases sustaining this general principle, we cite *Ohio, etc., R. Co.* v. *Stein* (1892), 133 Ind. 243, 31 N. E. 180, 19 L. R. A. 733; *Pittsburgh, etc., R. Co.* v. *Haislup* (1907), 39 Ind. App. 394, 79 N. E. 1035. In this case, we are not informed as to the length of time that had elapsed after the accident until the groans were heard by the mother of Mrs. Ruetz, but, after that time, the decedent was able to give his name and telephone number to the witness, with the request that she call his wife, to give her the names of three physicians, with the request that she call any one of them, to request her not to call his son because he had been in the hospital, and, when she had picked up his money which he had lost, to request her to keep it for him. After this conversation with him, enough time elapsed for Mrs. Ruetz to carry out his requests with reference to calling Mrs. Scott and a physician, Mrs. Scott to call her brother, who was about a mile from the place of the accident, and send him to her husband, and for the physician to arrive. The time elapsing being somewhere between ten and thirty minutes after Scott's groans were heard. Whatever may have been his condition as to being dazed when Mr. Jensen arrived, there is certainly no evidence of such condition at the time he gave specific directions as to the things to be done, and after the happening of these things and because of the lapsing of time that had intervened between the happening of the accident and the statements offered as *res gestae*, we are forced to say that such statements had lost the element of spon-

taneity, that they were statements rather of a past fact, and as such were hearsay, and it was error to permit them to go to the jury.

Cases presenting circumstances so much like the instant case as to constitute controlling precedents are most difficult to find. In the case of *Jones* v. *State* (1880), 71 Ind. 66, a murder case, the injured party was shot after night, and through a window. It appears that the first thing that he said was "Go for a doctor," and then the state was permitted to prove that a few minutes thereafter he made a statement giving the name of the person who shot him. It was held that this statement constituted no part of the *res gestae,* and that it was reversible error to admit it.

In *Cincinnati, etc., R. Co.* v. *Gross* (1917), 186 Ind. 471, 111 N. E. 962, the conductor and rear brakeman were in the caboose at the time of the accident and the trial court refused to admit as *res gestae* certain declarations made by the former to the latter concerning the accident, which had been made while they were yet in the caboose and immediately after the accident. The Supreme Court sustained the trial court in its ruling.

We cannot agree with appellee's contention that final decision as to the admissibility of such evidence is for the trial court, and that its decision is not subject to review. We are not unmindful of the 3, 4. holding in *Cincinnati, etc., R. Co.* v. *Gross, supra,* that, "Whether they (the statements) might be so considered was peculiarly for the trial court to determine under all the circumstances in issue" but we do not understand from that holding that such decision was not subject to review. In fact, the statement just quoted is followed by, "and the record fully sustains its decision." Thus, in that case, the Supreme Court passed upon the action of the trial court, approving it.

But in all of the cases in Indiana, and in the overwhelming number of them in other states, the admissibility of such evidence has been for the court and not for the jury. It was error for the court, by instruction or otherwise, to leave it to the jury as to whether it should consider such evidence.

Photographs and evidence were permitted to go to the jury as to the condition of the crossing at a time after the accident, and after certain repairs or improvements were made. Such evidence was improper. Whether there had been negligent discharge of its duty to keep the crossing in proper condition must be determined from its condition at and prior to the accident, and not from the repairs made thereon thereafter. *Chicago, etc., R. Co.* v. *Lee, Admr.* (1897), 17 Ind. App. 215; *Terre Haute, etc., Co.* v. *Clem* (1890), 123 Ind. 15, 23 N. E. 965, 7 L. R. A. 588, 18 Am. St. 303.

Appellant complains that it was not permitted to show, not only the small amount of traffic at the alleged place of the injury, but that there was a convenient way by which Scott could have avoided the dangerous crossing. We deem it unnecessary to discuss this question further than to refer the litigants to the well-reasoned case of *Town of Gosport* v. *Evans* (1887), 112 Ind. 133, 2 Am. St. 164, cited by both parties, which will prove a safe guide in this regard in the event of another trial. Other questions presented are not, in our judgment, of such importance as to justify extending this opinion in their discussion.

The judgment is reversed, with instruction to the court to grant a new trial.