CAULDWELL, INC. ET AL *v.* PATTERSON.

[No. 19,227. Filed October 4, 1961. Rehearing denied November 15, 1961. Transfer dismissed March 9, 1962.]

140

Paul E. Blackwell, Rochford, Blackwell & Rochford
of counsel, of Indianapolis and Brunner, Brown &
Brunner, of Shelbyville, for appellant.

Earl C. Townsend, Jr., John F. Townsend, Townsend
& Townsend, of Indianapolis, and H. Harold Soshnick,
of Shelbyville, for appellee.

BIERLY, J.—This is an action by Clifford Patterson, appellee, upon his complaint for damages for personal injuries arising out of an automobile collision.

In his amended complaint appellee alleges that the injuries he sustained were proximately caused by the negligence of appellant, Earle Covalt, who was an agent and operator of a taxicab owned by appellants, Clinton G. Cauldwell, Inc., and United Taxi Company, Inc.

The collision occurred at the corner of Ninth and Alabama Streets in the city of Indianapolis. Appellant, Clinton Cauldwell, Inc., filed a counter claim for property damages to which appellee responded by way of an answer. The action brought against United Taxi Company, Inc., was dismissed.

Trial was had before a jury. The verdict was for appellee in the sum of $13,750.00 as damages. Appellant moved for a new trial which was overruled, and this appeal followed. Error assigned is that the court erred in overruling the motion for a new trial.

The motion for a new trial was predicated upon the following grounds:

"1. The verdict of the jury is not sustained by sufficient evidence.

"2. The verdict of the jury is contrary to law.

"3. The damages assessed by the jury are excessive.

"4. Error of law occurring at the trial as follows:

The court erred in giving to the jury, at the request of plaintiff, instructions numbered 2, 4, 5, 8, 10 and 16, to the giving of which the defendants at the time excepted, and to the giving of each of which instructions, the defendants duly objected within the proper time to each of said instructions, after the court had indicated the instructions would be given to the jury.

"5. Error of law occurring at the trial as follows: The court erred in refusing to give to the jury defendants' instructions numbered 1, 2, 4, 5, 6, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 22 and 29, to which rulings defendants at the time excepted.

"6. Error of law occurring at the trial as follows: The court erred in sustaining the plaintiff's objection to a question propounded to the defendants' witness, Patricia Ann Senteney, by defendants' attorney, Paul Blackwell, on direct examination, which question, the objection thereto, the court's ruling thereon, are in the words and figures following: . . . ." (The questions, answers, objections, and the ruling of the court are set out in full.)

All of the instructions are not listed in appellants' brief, but after filing with this court a petition to amend their brief, and upon the same being granted, appellants filed an amendment to appellants' brief, which included all instructions omitted.

Appellants' first specification in their motion for a new trial was that the verdict of the jury is not sustained by sufficient evidence. It is a well settled rule that if there is some evidence of probative value to support the conclusion reached by the jury, the verdict will not be disturbed on appeal. *Chi. & Cal. Dist. Transit etc.* v. *Stravatzakes* (1959), 129 Ind. App. 337, 156 N. E. 2d 902; *Sims Mtr. Transp. Lines, Inc.* v. *Davis, Admx.* (1955), 126 Ind. App. 344, 130 N. E. 2d 82; *Ludwick, Extr. et al.* v. *Banet et al.* (1955), 125 Ind. App. 465, 124 N. E. 2d 214; *Sheets* v. *Voland* (1954), 124 Ind. App. 695, 119 N. E. 2d 325.

At or around 5:00 P.M., Central Standard Time, February 11, 1956, appellee, Clifford Patterson, William Staggs and Mary Beed were riding in appellee's car, and proceeding in a southerly direction on Ala-

bama Street in the city of Indianapolis. When they arrived at the intersection at Ninth and Alabama. Streets, appellee's car struck appellants' taxicab which was entering Alabama Street from Ninth Street. As a result of this collision, appellee was injured about the mouth, the knees, and the hands.

Undisputed evidence discloses that stop signs were located at Ninth Street, requiring all traffic to stop prior to entering Alabama Street. It is argued by appellants that evidence was introduced purporting to show that Earle Covalt stopped parallel to the stop sign on Ninth Street. It is within the province of the jury and not the reviewing court to determine the weight of the evidence and the credibility of the witnesses. *Gates et al.* v. *Petri* (1957), 127 Ind. App. 670, 143 N. E. 2d 293. The same rule applies to appellants' argument that appellee was traveling about 45 miles per hour in an area where the speed limit was 30 miles per hour. Other evidence produced was to the effect that appellee was driving at the rate of 20 to 25 miles per hour. It is the province of the jury to evaluate the testimony of witnesses and having done so, it alone must reach a conclusion from evidence presented. This court will not disturb the decision or verdict of the jury unless it is apparent by the record that there is a total lack of evidence of probative value to sustain each material element essential to the plaintiff's recovery. *Westfield Gas Corporation* v. *Hill* (1960), 131 Ind. App. 558, 169 N. E. 2d 726; *Armstrong Cork Co.* v. *Maar* (1953), 124 Ind. App. 105, 111 N. E. 2d 82 and Rehearing denied in 124 Ind. App. 105, 112 N. E. 2d 240. It thus appears that appellants' argument and specification that the verdict is not sustained by sufficient evidence is without merit.

It is contended by the appellants (Specification No. 3) that the damages assessed by the jury are excessive. The evidence discloses that appellee suffered injury about the mouth, about the knees and hands. Evidence shows that appellee first consulted a physician within three or four days following the accident. The physician testified that appellee had a shallow cut about an inch long through one of the deep folds in the left palm; also, he suffered a bruised and shallow cut of the right leg about two inches below the bend at the knee joint, and three areas of bruises over the left knee and two others a short distance below the knee level; also, he suffered some swelling within the left knee joint. Although from the evidence, it appears that all other injuries healed, the left knee joint continued to give appellee trouble with a snapping in and out, or a locking and unlocking condition was apparent within the knee joint. Evidence further disclosed some apparent wasting away of the leg.

The appellee visited the physician several times and during the early visits the physician advised an operation on the knee joint. On or about the 19th of February, 1957, about one year after the accident, the physician urged appellee to undergo surgery on his knee. Appellee finally consented to an operation and entered hospital on December 15, 1957. In this operation on the knee a piece of cartilage was removed, and evidence of degeneration of tissue was evident. By testimony of the physician, the impairment of effective utility of the knee was reduced approximately twenty to twenty-five percent from a normal condition.

While $13,750.00 may appear to be a sizeable sum by way of damages in this case, yet it is not within

the province of this court to arbitrarily charge said sum as being excessive. The trial court and jury noted the appearance of the plaintiff-appellee, heard his testimony, also the testimony of the medical expert, all other witnesses, and the instructions of the court. The determination of damages is largely a jury function. This court may interfere only when it appears obvious that the amount is so grossly excessive, as to induce belief that it was the result of prejudice, partiality or corruption. *Chi. & Cal. Dist. Transit etc.* v. *Stravatzakes, supra,* at page 354.

In the consideration of the amount of damages, if any, to be awarded, the jury may determine from the evidence, facts and inferences that may be drawn therefrom, the character of appellee's injuries, whether temporary or permanent, his physical and mental pain, if any, his suffering caused by and arising from his injuries, if any; also, any probable future pain, suffering and physical infirmities or disabilities, if any, resulting from said injuries. The jury may also consider expenses appellee incurred by way of medical and hospital services, medicine and fees by physician in treating the injuries. Evidence was introduced that by occupation, appellee was an automobile body repair man; that this employment required appellee to stoop and get in very uncomfortable positions to perform his assigned tasks. Appellee testified that his wage was determined by the amount of work accomplished and that the twenty to twenty-five percent impairment suffered because of his injuries reduced his income materially.

By way of stipulation, the life expectancy of appellee was thirty to thirty-five years, and that the probability was that said appellee's future livelihood

depended upon his trade as an automobile body repairman.

It appears from all the evidence of probative value in this cause that the award of $13,750.00 to appellee cannot be considered as an award based on prejudice, passion or corruption. Damages will not be deemed based upon passion, prejudice or corruption, unless the size of the award cannot be explained on any other reasonable grounds. *Chi. & Cal. Dist. Transit etc.* v. *Stravatzakes, supra,* page 337.

It is argued by the appellants, however, that appellee waited too long before submitting to an operation on his knee. The physician testified relative to the effect of the delay of the operation and the probable future effect of the leg or knee injury, to-wit:

> "I think I made the comment that knee cartilage injuries are treated on the basis of the trouble they're giving now and for the necessity to avoid late degenerative changes in the knee. *This treatment was delayed beyond the time at which it was suspected as being necessary and some of those changes have already occurred. The changes that have occurred are irreversible, they will be permanent. . . .*" (Emphasis supplied.)

This court lacks knowledge as to whether the jury considered such evidence in arriving at its verdict. Should appellants have considered the above testimony of delay of treatment as a factor of importance as affecting the award, appellants should have submitted instructions to that effect. We quote from the opinion in the case of *Cleveland, etc. R. Co.* v. *Clark* (1912), 51 Ind. App. 392, 417, 97 N. E. 822, as follows:

> ". . . If facts had been developed during the trial of the case which, in the opinion of appellants, were likely to be improperly considered by the jury in awarding damages; and if appellants desired to have the jury

especially warned and instructed against considering such facts on this question, it was the duty of appellants to request an instruction of this character. Having failed to do so, they cannot now complain. . . ."

Appellants contention, that the awarded damages are excessive, have been carefully examined by this court, and we are of the opinion that the evidence does not warrant an acquiesence in that contention.

Appellants argue that the trial court erred in sustaining appellee's objection to a question propounded to this witness, Patricia Ann Senteney. Two companions of appellee, William Staggs and Mary Beed, were riding with him at the time of the accident. It appears from the evidence that about an hour after the accident, appellee and Staggs walked back to their apartment at 1014 North Alabama Street. Living in this same apartment house was appellants' witness, one Patricia Ann Senteney. She testified that she saw appellee and Staggs both before and after the accident. When the witness on direct examination was asked by Mr. Blackwell, attorney for appellants, as to whether any conversation ensued at the time of the accident in her presence or in the presence of Patterson, appellee, the witness testified as follows:

"A. Yes.
"Q. And what was that conversation?
"A. Well, I had asked Bill what had happened.
    MR. TOWNSEND, Attorney for Plaintiff: "May I ask a preliminary question?
    COURT: "Yes.
    MR. TOWNSEND, Attorney for Plaintiff: "Was Patterson present during this conversation?
"A. He was sitting in the room, *I think;* yes, I'm pretty sure he was.
    MR. TOWNSEND, Attorney for Plaintiff: "You're not sure, though?

"A. Yes, he was sitting on a couch.
    MR. TOWNSEND, Attorney for Plaintiff:
    "Did he hear the conversation?

"A. I don't know about that.
    MR. BLACKWELL, Attorney for Defendants: "I am going to object to that, Your Honor.
    MR. TOWNSEND, Attorney for Plaintiff: "Well, I think it's important whether he heard it or not.
    COURT: "If he was close enough to hear. I don't know.
    MR. SOSHNICK, Attorney for Plaintiff: "If it please the Court, I think that the testimony is objectionable for the reason that anything that was said on an unrelated subject at a time other than at or near the time of the collision in controversy would be so remote that it could lend no significance to any of the issues to be tried in this case and that any conversation on any transaction separate and apart from the one in controversy would not be germane to any of the issues in this case.
    COURT: "I don't know what the subject was, whether it was germane to the issues in this case or not.
    MR. TOWNSEND, Attorney for Plaintiff: "There has been no foundation laid when Staggs testified for any impeaching testimony as against Staggs.
    MR. BRUNNER, Attorney for Defendants: "This is not an impeaching question and the purpose of it is not impeaching.
    COURT: "Go ahead. If it isn't germane I will strike it out.
    Objection overruled.

"Q. At the time that the Plaintiff and the person that you have designated as Bill Staggs returned, where did you see them at that time, Mrs. Senteney?

"A. Well, I seen Bill Staggs right outside Orville Harrison's apartment downstairs.

"Q. At that time did you also see Mr. Patterson?

"A. Well, I heard him.
  COURT: "Just answer that yes or no.

"A. Yes.

"Q. And at that time had he been injured?

"A. Yes.

"Q. Now when you had the conversation with Mr. Staggs how close, if you know, was Mr. Patterson at that time?

"A. Well, shall I explain where the couch was sitting at that time?

"A. Yes.

"Q. It was right inside the door of the apartment and he was sitting on the end, the farthest end.

"Q. About how far was that from the door?

"A. Oh, I'll say about twelve feet, I suppose, ten.

"Q. And you talked with Mr. Staggs in a normal voice or tone of voice?

"A. Yes.

"Q. Relate that conversation that you had at that time with Mr. Staggs.
  MR. TOWNSEND, Attorney for Plaintiff: "I'm going to object because I think when she testifies that this man is outside his room in a hall and Patterson is in the room at the other end of a couch, that's a pretty fair showing that he wasn't in a position to hear. She doesn't talk in a very loud voice.

  MR. SOSHNICK, Attorney for Plaintiff: "And for the further reason that any statement made by Mr. Staggs, whether in or outside of the presence of the Plaintiff herein, would not be binding upon the Plaintiff in this case. For the further reason that Mr. Staggs, when on the witness stand here as a witness, was not asked whether he had or had not said or made such a statement and there is therefore no foundation laid for the purpose of

asking whether or not he made such and such a statement.

COURT: Objection sustained.

"Q. Mrs. Senteney, at the time you were talking to Mr. Staggs the door was open?

"A. Yes.

MR. BLACKWELL, Attorney for Defendants: "At this time the Defendants would offer to prove that if the witness had been permitted to answer this question and relate the conversation that she would have testified that Staggs

MR. SOSHNICK, Attorney for Plaintiff: Just a minute. I would like to ask that you make the offer to prove so that the Jury can't hear it.

MR. BLACKWELL, Attorney for Defendants: "I don't mean for them to. That he related that they had been

MR. TOWNSEND, Attorney for Plaintiff: "You can hear that very clearly all over this room. I think it is improper for the Jury to hear what they are going to try to prove.

COURT: "That's true.

"Q. Mrs. Senteney,

COURT: "Do you want to withdraw your offer?

MR. BLACKWELL, Attorney for Defendants: "I will withdraw the offer at this time.

"Q. Mrs. Senteney, I believe you testified that when you had the conversation with Mr. Staggs the door was open.

"A. Yes.

"Q. Now will you please relate the conversation that you had at that time.

MR. TOWNSEND, Attorney for Plaintiff: "To which we object, for the same reasons given.

COURT: Objection sustained.

MR. BLACKWELL, Attorney for Defendants: "At this time the Defendants would offer to prove that if the witness had been permitted to relate the conversation with Mr. Staggs at the time and place in question that Mr. Staggs had related to her that they had been involved in an accident and that Patterson had been driving at a speed of forty to fifty miles an hour and that he had asked him to slow up.

COURT: Offer to prove refused, objection sustained, exceptions to the Defendants."

Objections raised by appellee were upon three grounds:

(1) That conversation was not made in the presence of appellee.

(2) That no foundation was laid as to the conversation.

(3) It was too remote to the time of the accident.

On the other hand, appellants argue that the evidence sought to be introduced is taken out of the "hearsay" rule by reason of the presence of the appellee at the time.

From the evidence, it is disclosed that the alleged statement was made outside of the door of the room where appellee was seated. Evidence further shows that appellee was sitting at the farthest end of a couch about ten or twelve feet from the open door. Testimony was to the effect that the conversation was conducted in a normal voice. This court has no knowledge how loud or how soft the "normal voice" actually was. The appellee contended that the witness spoke in a very soft tone. Whether she could be heard and whether the conversation was heard by the appellee at that distance and under the circumstances appears to be a matter for the court to determine relative to

its admissibility as evidence. The appellants strongly insist and contend that the evidence was admissible as a part of the res gestae, and, therefore an exception to the principle of the hearsay rule.

The admissibility of evidence under the res gestae doctrine is a matter within the discretion of the trial court. *Kelley* v. *Dickerson* (1938), 213 Ind. 624, 13 N. E. 2d 535. When admitting or refusing such evidence, the trial court should take into account the particular facts of the particular case. *Lake Erie etc. R. Co.* v. *Scott, Admx.* (1925), 83 Ind. App. 357, 147 N. E. 315.

It appears that a satisfactory definition of what evidence constitutes a part of the res gestae has never been produced. The greatest area of uncertainty involves the element of time. The statement cannot be a narration of past events but must be based largely upon spontaneous utterances made at the time of an accident, or occurrence, or transaction. *Kelley* v. *Dickerson, supra.* See also "past events", *Binns* v. *The State* (1877), 57 Ind. 46; *Morehouse et al.* v. *Heath* (1885), 99 Ind. 509; Brown v. *Freudenberg* (1938), 106 Ind. App. 692, 17 N. E. 2d 865.

We think that the length of time that has elapsed from the time of the accident and the place where the statement is made, materially affects the spontaneity established by the rule. *Indianapolis St. R. Co.* v. *Taylor* (1905), 164 Ind. 155, 72 N. E. 1045; *Montgomery* v. *Pierson* (1924), 195 Ind. 475, 145 N. E. 771; *Thistlewaite et al.* v. *Thistlewaite et al.* (1892), 132 Ind. 355, 31 N. E. 946. When a lapse of time intervened between the accident and a statement, it must be so interwoven with the principal fact that it cannot be separated and hence becomes a

part of the res gestae. *Mitchell* v. *Colglazier et al.* (1886), 106 Ind. 464, 7 N. E. 199; *Louisville, New Albany and Chicago Railway Co.* v. *Buck, Adm'r.* (1888), 116 Ind. 566, 19 N. E. 453. This court has held that where a bus operator voluntarily and spontaneously stated some four or five minutes after a collision that he had not observed the truck prior to the collision, and inasmuch as it occurred immediately after the operator was capable of speaking, and was so closely identified with the main event, such statement was admissible as a part of the res gestae. *Gary Railways* v. *Cline* (1951), 121 Ind. App. 449, 97 N. E. 2d 628. There is a holding by the Supreme Court involving an action for injuries sustained at a railroad crossing that certain statements made by the driver of the plaintiff, Wright, one half hour after the accident and at a different location, were not admissible as a part of the res gestae to show that he did not see the train. *Pittsburgh, Cincinnati and St. Louis Railway Company* v. *Wright* (1881), 80 Ind. 182.

In the case at bar, Staggs, a passenger and a witness for appellee, allegedly made certain statements derogatory to appellee, regarding the accident an hour or more after the accident and at a different location. Such statement, made at the time and under the circumstances related, it appears that such could not be considered as a part of the res gestae and would not be admissible. The trial court committed no reversible error in excluding this testimony. See *Days Transfer* v. *Silvers* (1952), 122 Ind. App. 318, 104 N. E. 2d 392.

Specification No. 4 of appellants' motion for a new trial alleges error in the giving by the court of instructions numbered 2, 4. 5. 8, 10 and 16 tendered by appellee.

It is not stated in this Specification No. 4 that these instructions were given over specific objections of appellants. In said specification, it is stated that "the defendant duly objected within the proper time to each of said instructions." These appear to be general rather than specific objections, nor are they set out in said Specification No. 4.

This court in a recent case of *Cheek* v. *Jordan, d/b/a Jordan Funeral Home* (1960), 131 Ind. App. 127, 169 N. E. 2d 608, 613 relative to objections said:

". . . Although specific objections to the giving of instructions must be made (Rule 1-7), it is now held that said rule does not require that such specific objections must appear in the motion for a new trial. *Siebeking* v. *Ford* (1958), 128 Ind. App. 475, 487, point 6, 148 N. E. 2d 194. However, it would seem proper to allege in the new trial motion that the designated instructions were given over the *specific objections* of the complaining party. . . ." (Our emphasis).

The first instruction in said Specification No. 4, referred to in appellants' argument is Instruction No. 2. The requested instruction tendered by appellee and given by the court with the appellants' objection thereto, follows:

Appellee's Instruction No. 2:

"The plaintiff has dismissed his case as against Earle Covalt and United Taxi Company, Inc. It has been stipulated by defendant, Clinton G. Cauldwell, Inc., that said Earle Covalt, at all times complained of in this case, was acting as its agent. Any negligence of which he may have been chargeable under the complaint would necessarily also be chargeable against Clinton G. Cauldwell, Inc. And hence any verdict you would find in favor of the plaintiff, if you find for the plaintiff in this cause, would be only against said Clinton

G. Cauldwell, Inc., the sole remaining defendant."

Appellants' Objection Thereto:

"At the close of all of the evidence in this case and before the beginning of argument, the Defendant objects to the giving of Plaintiff's Instruction No. 2 for the reason that the Court in effect is excusing the conduct of the Plaintiff in dismissing his action as against one of the Defendants, basing that upon the use of the word 'since' as set out in the instruction. Defendant further objects to the Plaintiff's Instruction No. 2 for it in effect invades the province of the Jury and directs the Jury to find a verdict in favor of the Plaintiff."

Appellants argue that the court committed error in informing the jury that plaintiff-appellee had dismissed his action against defendant, Earle Covalt, or should have informed the jury that Covalt had the legal right to proceed to trial on his counterclaim, as provided by §2-1021, Burns' Ind. Stat., 1946 Replacement. Appellants thus argue that the instruction could have misled the jury in thinking that Covalt had no further recourse. Further, appellants argue the use of "hence" excused conduct of plaintiff-appellee, in dismissing his action against one defendant. Finally appellants argue that the instruction invades the province of the jury by directing it to return a verdict in favor of plaintiff-appellee.

This instruction may be considered in reference to the Court's Instruction No. 19, where the court stated that plaintiff-appellee had dismissed his action against all defendants except the defendant, Clinton G. Cauldwell, Inc.

This court is of the opinion that the trial court did not err in said instruction when the jury was told

that Clinton G. Cauldwell, Inc., was the only defendant to be considered. *Flanagan, Wiltrout and Hamilton, Indiana Trial and Appellate Practice,* ch. 10, §1302, comment 14, p. 128, is authority as to the legal right of plaintiff-appellee to dismiss as to defendants, and excepting Clinton G. Cauldwell, Inc. The case of *Stevenson* v. *Stunkard* (1909), 44 Ind. App. 716, 719, 90 N. E. 106, 108 is cited. The objection raised by appellants that the instruction "in effect invades the province of the jury and directs the jury to find a verdict in favor of the plaintiff" is too general and indefinite to constitute a specific objection as required by Rule 1-7. Thus we find no error with respect to the giving of this instruction is available. *Elgin, etc., R. Co.* v. *Scherer* (1951), 121 Ind. App. 477, 98 N. E. 2d 369.

Error is claimed by appellants in the giving of appellee's Instruction No. 4. Instruction No. 4 involved a stipulation between the parties to the effect that an ordinance of the City of Indianapolis provided for vehicles stopping prior to entering preferential streets and named such streets as preferential by said Ordinance 4-709. The court instructed the jury that, if from the evidence, if it found Earle Covalt, without justification, violated the provision of said ordinance, as alleged in the complaint, then such violation would constitute negligence by Clinton G. Cauldwell, Inc., the defendant. Appellants contend that negligence of the defendant, alone, was not sufficient to justify a finding for plaintiff-appellee; that negligence must also be the proximate cause of the accident and plaintiff must be free from contributory negligence.

While appellants did not set out any of the Court's Instructions in their brief, they were set out in ap-

pellants' amended brief. It appears to us that the Court's Instructions No. 12 and No. 18 were sufficient to bring to the attention of the jury the element of proximate cause. The court therein stated that he did not embody all of the applicable law in one instruction, and that it was the duty of the jury to construe any single instruction with all the other instructions. The court's definition of proximate cause appears to have been approved on numerous occasions. *Kingan & Co.* v. *Albin, Admx.* (1919), 70 Ind. App. 493, 123 N. E. 711. We find no error by the trial court in giving appellee's Instruction No. 4.

Appellee's Instruction No. 5 given by the court, stated that there was in full force and effect at the time and place of the accident, an Indiana statute as follows:

"The driver of a vehicle shall . . . stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one [1] or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed." Section 47-2028(b), Burns' Ind. Stat., 1952 Replacement.

The instruction stated that by stipulation that Alabama Street at its intersection with Ninth was designated as a through street or preferential street with stop signs on Ninth at the entrance to Alabama Street. The instruction further told the jury that if it found:

"from a preponderance of the evidence that without justification defendant's taxicab failed to stop prior to entering said Alabama Street from Ninth Street, or having stopped, failed to proceed cautiously, or failed to yield the right-of-way

to a vehicle which was not so obliged to stop and which was within the intersection or was approaching along said Alabama Street so closely as to constitute an immediate hazard, then such conduct upon the part of defendants would constitute negligence and would entitle the plaintiff to recover if such negligence proximately caused plaintiff's injuries without contributory negligence upon plaintiff's part. 47-2028 b; 81 N. E. 2d 790, 794, *Fields* v. *Hahn* 115 App. 361, 374"

Appellants object to said instruction by asserting that since the complaint pleaded a violation of a city ordinance of the city of Indianapolis, which was in full force and effect, it was improper for the court to give said Instruction No. 5 relative to a violation of §47-2028 (b), Burns' Ind. Stat., 1952 Replacement, when the complaint contained no allegation of a violation thereof. Appellants further object to said instruction which informed the jury that Alabama Street was at said time a preferential street, when it was in truth and in fact a preferential street by virtue of the city ordinance instead. Appellants concluded their objection to said instruction that a violation of the quoted statute, "although negligence per se, ignored such a violation that might be justifiable, and for the further reason that any negligence must be a proximate cause of the plaintiff's injuries."

The 1939 General Assembly enacted Chapter 48 dealing with Highway Traffic Regulations. Section 28 of this act was amended in 1947. Chapter 338, Section 4, the same being §47-1828, Burns' Ind. Stat., 1952 Replacement, with the heading "Power of Local Authorities," division (a) and sub-section 6 reads as follows:

"(a) The provisions of this act shall not be deemed to prevent local authorities, with respect

to streets and highways under their jurisdiction and within the reasonable exercise of the police power from: . . .

"6. Designating any highway as a through highway and requiring that all vehicles stop before entering or crossing the same or designating any intersection as a stop intersection and requiring all vehicles to stop at one or more entrances to such intersection."

Cities only have such powers as are delegated by the State Legislature and such powers may be minutely prescribed and limited.

Said chapter 48 of the 1939 Acts, §27, Burns' §47-1827, 1952 Replacement is as follows:

"Provisions of act uniform throughout state. The provisions of this act shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein and no local authority shall enact or enforce any rule or regulation in conflict with the provisions of this act unless expressly authorized herein. Local authorities may, however, adopt additional traffic regulations with respect to streets and highways under their jurisdiction, which are not in conflict with the provisions of this act."

In the stipulated ordinance, Alabama Street at Ninth was designated as a preferential street or highway and that after signs were erected, all vehicles must stop prior to entering said Alabama Street. This ordinance, as stipulated, was silent as to any requirement of any legal duties of an operator who after stopping failed to yield the right of way or failed to proceed cautiously to other approaching vehicles. Since no ordinance was cited to cover such situations if a driver or operator should be charged with a violation of failure to yield right-of-way or proceed cautiously, proceedings against such driver must be by §47-2028 (b), Burns' Ind. Stat., 1952 Replacement.

The court in the given instruction charged the jury that if it found by preponderance of the evidence that without justification defendants' taxicab failed to stop before entering Alabama Street from Ninth, or after stopping, having failed to yield the right-of-way to a vehicle which had no obligation to stop, and which was within the intersection or was approaching along Alabama Street "so closely as to constitute an immediate hazard, then such conduct upon the part of the defendants would constitute negligence and would entitle the plaintiff to recover if such negligence caused plaintiff's injuries without contributory negligence upon plaintiff's part."

Section 2-1068, Burns' Ind. Stat., 1946 Replacement, in authorizing an amendment to a complaint to conform the pleadings to the proof, permits such amendment to be made after trial and before final judgment. The evidence tends to establish that the defendant violated the statute at said intersection and the complaint must be considered amended to conform to such proof. We find no reversible error in the court giving appellee's Instruction No. 5.

Appellants' objections to appellee's Instruction No. 8, given by the court, charges error in that the court told the jury that the cab driver, Covalt, operated his cab by violating a stop sign; that said instruction further failed to include "the element of violation where the same is justified under the law;" that there was an omission that "any negligence which would entitle the plaintiff to recover must be such negligence as constitutes proximate cause;" and that said instruction is "premised upon plaintiff's tendered Instruction No. 2 and outside of the issues of this case."

A perusal of Instruction No. 8 reveals that the court used the words "if you first find" and thus failed to state that Covalt had violated the stop sign. ■ Further that in reference to the court failing to insert in said instruction "the element of a violation where the same is justified under the law," we feel that the element of justification was covered by appellee's Instructions No. 4 and No. 5, and hence not necessary to include the same in this instruction. *Lafayette Street Railway, Inc.* v. *Ullrich* (1929), 92 Ind. App. 202, 214, 166 N. E. 257. It was within the province of the appellants to have proffered instruction in relation to justification for their alleged negligence.

Proximate cause was covered in an adequate manner by the Court's Instructions No. 6 and No. 18.

As to the objection by appellants that said Instruction No. 8 was premised upon appellee's Instruction No. 5, and is without the issues of this case, ■ appellants have cited no case or authorities and we think this does not meet the requirement of the rules by being indefinite, uncertain and too vague, Rule 1-7.

Appellee's Instruction No. 10, given by the Court, reads as follows:

"The Court instructs you that the plaintiff, Clifford Patterson, under the laws of the State of Indiana was entitled to assume, until he had reasonable cause for notice to the contrary, that defendant in operating the taxicab in question would not disregard the stop sign, if you find that *it* did, at the intersection of 9th Street and Alabama Street and that *it* would not drive into said intersection without stopping said taxicab before entering the same, if you find such to be the fact; and you are further instructed that the plaintiff cannot be found guilty of contributory

negligence for relying on that assumption. (Our emphasis.)

The appellants' objection thereto is in words, to-wit:

"At the close of all of the evidence in this case and before the beginning of argument, Defendant objects to the giving of Plaintiff's tendered Instruction No. 10 for the reason that said instruction invades the province of the jury in this:

That it advises the Jury that the driver, Earle Covalt, did in fact disregard the stop sign at said intersection and did drive into said intersection in violation of law, and further omits the violation of an ordinance or statute where there was justification therefor."

Appellants contend that this instruction invades the province of the jury and that the driver, Covalt, failed to heed the stop sign and that his disregard of the stop sign was a violation of law as he proceeded into the intersection; that said instruction failed to take into account that there might have existed a justification for a violation of the ordinance or statute if there was such violation.

The instruction used the expressions "if you find that it did" and "if you find such to be the fact," thus we see little merit in appellants' contention that the court by said instruction advised the jury that the said Covalt disregarded the stop sign and entered the intersection in violation of law. Appellants cite *Spickelmeir* v. *Hartman* (1919), 72 Ind. App. 207, 123 N. E. 232, to the effect that this decision supports their objections. In that case we think the court refused the instruction because of a substantial defect "until he had reasonable cause for notice to the contrary." The court in the *Spickelmeir supra case,* page 212, said:

". . . This instruction (No. 1), if given, would have had the effect of informing the jury that appellant had the right to assume that appellee would obey said ordinance, and to operate his automobile in absolute reliance thereon under all circumstances. This is not in accord with the well-settled rule in that regard."

We think that the inclusion of the qualifying clause in Instruction No. 10 herein "until he had reasonable cause for notice to the contrary," distinguishes the case at bar from the aforesaid Spickelmeir case. *Kraning* v. *Bloxson, Admx.* (1937), 103 Ind. App. 660, 666, 5 N. E. 2d 649, stated the rule in these succinct words:

". . . The decisions of the courts sustain these observations, thus, one who is lawfully using a public highway in the absence of knowledge to the contrary, has the right to assume that others using it in common with him will use ordinary care to avoid injuring him, . . . he is not bound to anticipate a sudden violation of the statute or rule of the road by other persons . . . ."

We think the court committed no reversible error in the giving of appellee's Instruction No. 10.

Appellants charged error by the court in giving appellee's tendered Instruction No. 16 to the jury. Appellants by way of objection thereto, assume that said instruction advised the jury of the happening of the accident as occurring in a residential area as defined by law was improper, since there is no definition of a residential area save in accordance with §47-1818 of Burns' Ind. Stat., 1952 Replacement; that evidence produced disclosed construction of business or residential buildings for a distance greater than two hundred feet south from the intersection; and that the court improperly advised the jury "that it was lawful

to drive at a speed of 30 miles an hour unless special hazards existed, whereas in truth and in fact any hazards which, under the facts and the law could be interpreted by the jury to be less than due or reasonable care, would be the measure or standard of operation required of the operator of any motor vehicle." (Appellants' brief, pages 137 and 138).

In said Instruction No. 16, the court instructed the jury that "there is evidence in this case, that the collision complained of occurred in a residence district as defined by law." Through the examination of the statutes, it appears that the evidence precluded the accident as happening in a business district but the evidence was favorable to said collision as occurring in a residential district. The testimony of Officer Woirhaye on direct-examination testified that the speed limit along Alabama Street at the intersection was 30 miles per hour; on cross-examination, said witness testified that for a radius of five hundred feet in the vicinity from the scene of the accident, the area was on the fringe of the business district; that both south and north but not east there were businesses. On re-direct examination, witness Woirhaye testified that in answer to a question based upon his previous testimony that the vicinity of the accident was on the fringe of the business district, the particular area itself would be classified as a residential area.

We think that the evidence favorable to appellee was sufficient, as presented, that the collision happened in a residential area and that the court did not commit reversible error in giving to the jury appellee's Instruction No. 16 as tendered.

It is argued by appellants in Specification No. 5 of their motion for a new trial that the court erred in

refusing to give to the jury the appellants' tendered instructions numbered 1, 2, 4, 5, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 22 and 29. Here on appeal, appellants have failed to argue the court's refusing to give their instructions numbered 11, 12, 13, 16 and 22; therefore, this court must consider those points as waived.

Appellants argue that the court erred in refusing to give to the jury their tendered Instruction No. 1 which reads as follows:

"You are instructed to return a verdict for the defendants."

In support of this contention, appellants set out in their brief that evidence which was produced in their favor and as supporting their defense. When considering whether the trial court erred in refusing to instruct the jury to return a verdict in favor of appellants, neither the trial court, nor this court is concerned with that evidence presented in appellants' favor unless such evidence is without conflict and only one inference is deductible therefrom and, that inference supports appellants' contention. When ruling whether to direct a verdict, it is a well settled rule of law that only evidence most favorable to the party against whom the request is directed will be considered. When there is conflicting evidence, the trial court is not at liberty to weigh the same. To do so would be to invade the province of the jury. *Tabor* v. *Continental Baking Company* (1941), 110 Ind. App. 633, 38 N. E. 2d 257. It is appellants' duty to point out to this court wherein there was a total absence of evidence on an essential issue of appellee's case. *New York, Chicago & St. L. R. R. Co.* v. *Mercantile Nat. Bank* (1960), 130 Ind. App. 638, 165 N. E. 2d 382; *Whitaker, Admr.* v. *Borntrager* (1954), 233

Ind. 678, 122 N. E. 2d 734. Appellants have failed to do so. In accordance with Supreme Court Rule 2-17, if errors are argued without cogent citation of authorities, or, if the appellant has failed to support his contention by pointing out wherein there was insufficient evidence to sustain the verdict rendered below, those points will be considered as waived. *Scoville* v. *Hawkins* (1959), 129 Ind. App. 607, 159 N. E. 2d 307; *Wright* v. *State* (1958), 237 Ind. 593, 147 N. E. 2d 551.

Appellants' arguments that the court erred in refusing to give to the jury their Instructions Numbered 2, 4, 5, 6, 10, 14 and 15 are without merit. This court has carefully examined each point raised by appellants. It is our opinion that practically all matters mentioned in appellants' instructions were covered by the instructions given by the court. For example, Appellants' Instruction No. 2 was covered by the Court's Instructions Nos. 27 and 42; Appellants' Instruction No. 4 was more than adequately covered by the Court's Instruction No. 21; Appellants' Instruction No. 5 was adequately covered by the Court's Instructions Nos. 36 and 21; Appellants' Instruction No. 6 was covered by the Court's Instruction No. 32; Appellants' Instruction No. 10 was covered by the Court's Instructions Nos. 6, 7 and 18; Appellants' Instructions Nos. 14 and 15 were covered in the Court's Instructions Nos. 7, 8, 14, 15, 17, 23 and 26.

Instructions are to be considered together. The court is not obligated to instruct the jury on points which have been covered by other instructions given. *Wagner* v. *Howard Sober, Inc.* (1949), 119 Ind. App. 617, 86 N. E. 2d 719. Where the subject matter is covered or where the substance of the instruction offered is included in the instructions given, it is not error for the trial court to refuse to be repe-

titious. *Taylor* v. *Fitzpatrick* (1956), 235 Ind. 238, 132 N. E. 2d 919; *Hough* v. *Miller* (1942), 112 Ind. App. 138, 44 N. E. 2d 228. If those instructions tendered do nothing more than alter or vary the language of those instructions given, then such would amount to repetition and those instructions offered are properly refused. *City of Terre Haute* v. *Myers* (1940), 216 Ind. 349, 24 N. E. 2d 698.

Appellants argue that the court erred in refusing to give to the jury their tendered Instruction No. 17. This instruction reads as follows:

"Since a person when intoxicated or under the influence of intoxicating liquor, is less likely to use ordinary care in a given instance than when he is sober, it is always proper to inquire into his condition in this respect. If he has been called upon to use such care and it is found that at the time, he was intoxicated or under the influence of intoxicating liquor, this circumstance may be considered upon the question of whether he did in fact use ordinary care at the time in question."

Appellants contend that this instruction clearly states the law and because there was evidence that appellee was drinking prior to the time of the collision, the court should have given the instruction. However, appellants have failed to support their contention by citation of authority. The above tendered instruction from its very words could have misled the jury into believing that the court was finding as a matter of law that appellee was intoxicated at the time of the accident. We agree that there was some evidence that appellee had been drinking earlier in the day. But this evidence was contradicted by other testimony introduced. Whenever there is conflicting evidence of fact, it is the jury's duty and not the duty of the court to weigh the evidence to de-

termine which evidence is acceptable. It is an established principle of law that an instruction which "determines an issuable question of fact" the giving of that instruction would be "erroneous as invading the province of the jury." See 28 I. L. E. Trial, §169, p. 159. It is our opinion that the instruction was properly refused.

Appellants argue that the court erred in refusing to give to the jury their tendered Instructions Nos. 18 and 19.

Instruction No. 18 contained matters outside the issue in this case and would have misled the jury. The substance of Instruction No. 18 was to define what constitutes a "business district" and a "residence district." We have made an examination of the evidence presented in this case, and we do not find any evidence which confirms appellants' contention that the area where the accident occurred was a business district. The only evidence presented on this point was to the effect that this area constituted a residental district. Therefore the court was not obliged to subject the minds of the jury with matter on which there was no evidence. The Court's Instruction No. 41 more than adequately covered the law, with respect to the evidence presented. The instruction of the court is as follows:

> "You are instructed that there is evidence in this case that the collision complained of occurred in a residence district as defined by law. Therefore, I instruct you that at said intersection, in the absence of a finding that special hazards existed, it was lawful to drive at a speed of thirty miles an hour."

Appellants' Instruction No. 19 was also covered by the above quoted Court's Instruction No. 41, and in

our opinion, deleted portions of Appellants' Instruction No. 19 were not applicable to this case.

Appellants argue that the court erred in refusing to give their Instruction No. 29. The substance of that instruction was to the effect that where a party fails to produce a witness, when a witness is available, "raises the presumption that the evidence or testimony of such witness, if produced, would be unfavorable to" the party or against "his contentions."

It is appellants' contention that Mary Beed, who was a passenger of appellee at the time of the accident, was not called as a witness except to *rebut* the testimony of the appellants' witness, Patricia Ann Senteney; therefore, the jury was entitled to assume that her evidence would have been unfavorable to appellee.

It has not been shown wherein Mary Beed was not as much available to appear as a witness of appellants as she was for appellee. The failure to produce a witness when such witness is available to both sides "is no reason for indulging a presumption against either party." *Haymond* v. *Saucer* (1882), 84 Ind. 3, 13, wherein Indiana Supreme Court sustained the lower court's holding that it was proper to refuse such an instruction. We thus conclude that the court did not err in refusing to give appellants' tendered Instruction No. 29.

This court now concludes that the trial court did not commit reversible error in overruling appellants' motion for a new trial.

We are of the opinion that the judgment of the court should be affirmed.

The judgment is hereby affirmed.

Pfaff, C. J., and Kelley and Gonas, JJ., concur.

NOTE.—Reported in 177 N. E. 2d 490.