CHEEK *v.* JORDAN, D/B/A JORDAN FUNERAL HOME ET AL.

[No. 19,351. Filed October 6, 1960.]

128

130

*Charles W. Symmes, Richard W. Cardwell* and *Frank A. Symmes,* all of Indianapolis, for appellant.

*Gilbert W. Butler,* of Martinsville, *Dowden, Denny, Caughran & Lowe, Louis R. Lowe, Cadick, Burns, Duck & Neighbours* and *Floyd W. Burns,* all of Indianapolis, for appellees.

KELLEY, J.—Appellee Jordan was engaged by appellant's husband to convey appellant home from a hospital where she had undergone surgery. Appellant was brought home on a hospital cart in appellee's (Jordan Funeral Home) ambulance. It became necessary to take her upstairs to her bedroom. The stairway leading to said bedroom was narrow and contained a sharp right-angle turn which prevented the use of the hospital cart as a means of conveyance up the stairway. A dining room chair was selected for the purpose of carrying appellant up the stairway. The latter seated hearself in the chair and when appellee, Marqua, and his helper lifted it up, the chair broke at the top of the back and appellant fell approximately two to two and one-half feet to the floor. Appellant instituted this action for damages for her alleged personal injuries allegedly occasioned by the negligence of appellees.

Appellant's complaint counted upon four alleged acts of negligence, two of which the court withdrew from consideration by the jury upon motion of appellees. In substance the two remaining grounds of negligence alleged upon were that appellees "improperly attempted" to carry appellant upstairs "in that they attempted to lift the chair by means of holding to the top of the back of the chair and the front legs" when they knew or

should have known that the chair was not designed for the purpose and was unsafe; (2) that appellees "failed and neglected to inspect the aforesaid chair to ascertain whether or not it was so constructed and in such condition as to permit a safe means of conveyance" of appellant to her bedroom.

The jury returned its verdict for appellees and consistent judgment followed. Appellant's motion for a new trial, consisting of twenty-three specifications of asserted error, was overruled. Specifications numbered 1, 2, 6, 8, 15, 18 and 23 of the motion for new trial are not argued by appellant and are therefore deemed waived. The remaining specifications assert error in the giving of certain of appellees' instructions; the refusal to give certain appellant's tendered instructions; the withdrawal from the jury of the ground of negligence alleged in subparagraph (c) of rhetorical paragraph 7 of the amended complaint; the overruling by the court of objections made by appellant to certain questions put to several witnesses on direct examination; and the sustaining by the court of a motion by appellees to strike a remark of appellant's counsel in connection with an objection to a question put on direct examination of a witness.

We observe in passing that the specifications in the new trial motion relating to the evidentiary matters are inadequately stated to present any question concerning the same. The error of the court, if any, lies in the admission or rejection of evidence and the motion for a new trial, to be in proper form, should assert such as the ground of error. *Harvey, etc.* v. *Johnson School Twp., etc.* (1954), 124 Ind. App. 602, 117 N. E. 2d 279. Appellant's motion, in each instance, contained practically the same method of statement, namely: "There was error of law occurring at the trial

in that on direct examination (cross-examination was used in specification 7) of (here the name of the witness is given) the following took place and the following erroneous rulings were made:." Then follows a question or series of questions, an objection, a ruling by the court, and an answer. Now, it is true that the erroneous admission or exclusion of evidence is a ground for new trial under the Eighth cause of §2-2401, Burns' 1946 Replacement, but it is not proper to merely specify such ground in general terms. It has been held that a specification or ground of "errors of law occurring at the trial" does not present the erroneous admission of testimony. *Oiler* v. *Bodkey* (1861), 17 Ind. 600. In the present motion the specification says only as "an error of law occurring at the trial" that "the following took place" and "the following erroneous ruling was made." Just what "error of law" or "erroneous ruling" does appellant complain about? Is it the wrongful admission of evidence or the improper overruling of an objection to the question or the erroneous overruling of a motion to strike the answer or the erroneous sustaining of a motion to strike certain remarks of counsel from the record?

As illustrative of the difficulty we encounter when the statement of the new trial motion is as given above, we call attention to specification No. 9 of the new trial motion. It is there said that there was "error of law occurring at the trial" and "the following erroneous rulings were made." Then follows a question; a request to ask preliminary questions; granting of the request; a series of apparently preliminary questions and answers; a stated objection to the question for three given reasons; the overruling of the objection; the answer of the witness; a motion to strike the answer; overruling of the motion to strike; another question; statement of

counsel "The same objection;" overruling of the objection; answer of the witness; a motion to strike the answer; overruling of motion to strike; another question pertaining to a designated Exhibit No. 3 the nature of which is not shown; statement of counsel "Same objection"; overruling of the objection; answer of the witness; another question; statement of counsel "Same objection"; overruling of objection; answer of the witness; motion to strike the answer; overruling of the motion to strike. Now, what particular error of law or erroneous ruling are we to look for? The generality of the specification in appellant's new trial motion defeats its own purpose and leaves us in a vacuity.

Appellant says that specifications numbered 9, 10, 11, 12, 13, 14, 17, 19, 20, 21 and 22 of her motion for a new trial "all deal with the admissibility of evidence of general custom and practice in the trade" and are all considered under one argument. She then poses one question as illustrative of all. That question is quoted by appellant as follows:

"Particularly in November of 1955, what was the general accepted custom and method of tranporting a patient from an ambulance cot up the stairway where the stairway was of such dimensions as not to be able to get the cot up with the patient on it?"

The answer, admitted over appellant's objection, was: "The general practice was with a chair."

Although we have struggled long and earnestly to apprehend the reasons or grounds upon which appellant predicates her contention that the evidence was inadmissible, we have despaired of successful accomplishment. It appears to us that while appellant concedes that "upon the issues of negligence or contributory negligence, evidence of the ordinary practice or of uniform custom, if any, of persons in the

performance under similar circumstances of acts like those which are alleged to have been done negligently is generally competent evidence," yet, she attempts to evade the rule by asserting that it is subject to "certain qualifications," four of which she sets out as being declared in "the McCullough" case. The citation or volume reference to said case is not given and we do not know what case was intended by the reference. In any event, such asserted qualifications of the rule were not the objections made by appellant to the question. The objections, as set forth in appellant's brief, were, in substance: that the question is immaterial, irrelevant, and incompetent; (2) that the witness doesn't know of her own knowledge whether such was the "actual and accepted practice"; and (3) the question is not confined to the issues in the case as to what manner patients are transferred, what type of chairs are used, where the chairs are grasped, and would not prove in this case whether or not the manner in which the chair was used was or was not negligent. None of said stated grounds of objection to the question is argued by appellant in her brief. It follows, that we cannot, in order to reverse, determine an issue or contention which was not first presented to the trial court.

Specification No. 7 of appellant's motion for a new trial presents no question for consideration for the reasons assigned above concerning the specifications relating to evidentiary matters. We may say, in general, however, that said specification No. 7 sets forth a question on cross-examination of Viola Dunbar, a witness, as to whether it seemed to her that appellee, Marqua, "thought this particular dining room chair would be all right." Appellant objected to the question on the ground that it "is for the jury to determine—not the witness." The objection was over-

ruled and the witness answered *"I really do not know. I know he took the chair."* It is readily clear that there here exists no ground of error. No harm or prejudice was occasioned appellant by the question as the witness simply answered that she did not know (the information called for by the question).

Specification No. 3 of appellant's new trial motion charges error in the giving by the court of instructions numbered 7, 9, 11, 15, 18, 19 and 22 tendered by appellees. It is not stated in said specification that said instructions were given over the specific objections of appellant. Although specific objections to the giving of instructions must be made (Rule 1-7), it is now held that said rule does not require that such specific objections must appear in the motion for a new trial. *Siebeking* v. *Ford* (1958), 128 Ind. App. 475, 487, point 6, 148 N. E. 2d 194. However, it would seem proper to allege in the new trial motion that the designated instructions were given over the specific objections of the complaining party. The first of said instructions referred to in appellant's argument is said instruction numbered 15. That instruction told the jury that:

> "If plaintiff suggested that defendants carry her upstairs by making a handsaddle, or if she suggested that she be left downstairs on the davenport, or if she stated that she did not trust chairs for the purpose of carrying her upstairs, I instruct you that such expressions or suggestions of themselves, even if made, would not establish negligence on the part of defendants."

In substance, appellant objected to said instruction for the reason that it is mandatory; it advises the jury what they should not consider in determining the negligence charged in the complaint of the duty to inspect; that

an objection by appellant to the manner of taking her upstairs would apprise appellees of the *probability* of danger in transporting her in any other manner.

The said instruction does not appear to be mandatory and appellant does not so contend. It appears in the evidence that appellant said: "I don't trust chairs, would rather not be taken upon a chair"; "Why can't you make a hand saddle and carry me up that way"; and "if there is going to be so much fuss about it, put me on the davenport and let me remain there until my son comes home." Appellee, Marqua, denied that such statements were made by appellant. To say that appellant's said statement "would" apprise appellees of the *probability* of danger in transporting her "in any other manner" amounts to a conclusion of appellant unwarranted by the evidence and unsupported by the instruction. The mere fact that appellant made such statements or remarks would not, of themselves and without more, establish a "probability" that carrying her on a chair would be anymore dangerous than carrying her "in any other manner." The instruction, it seems to us, did not advise the jury as to what evidence they should consider in determining the negilgence charged in the complaint. It very pointedly told the jury that such "expressions or suggestions" would not, *of themselves,* establish negligence on the part of appellees. It did not preclude the jury from weighing and considering such statements in connection with other evidence on the issue of appellees' alleged negligence. Nothing is found in the instruction bearing on the question of the duty of appellees to inspect the chair used by them in lifting and conveying appellant or their alleged failure to so inspect such chair. There was evidence, also, to the effect that the method of carrying a person by hand saddle, as proposed by ap-

pellant, was not safe nor according to the common usage and practice in such cases. In view of such evidence it seems proper that the jury should have been advised that the mere statement of appellant that appellees make a hand saddle to carry her upstairs would not, alone or of itself, establish negligence on the part of appellees. Appellant's instruction No. 2, given by the court, advised the jury as to the duty of appellee, Marqua, to make a "reasonable inspection of the chair" to determine whether its construction and condition permitted a reasonably safe means of conveyance of appellant. We see no harm or prejudice to appellant by reason of or as a result of said instruction.

Error is claimed by appellant in the giving of appellees' instructions numbered 7, 9, 11, 18 and 19 on the ground that they are of a "repetitious nature." Appellant makes no argument or contention that she was harmed or prejudiced by reason of any alleged repetitiousness of said instructions. Her argument does not follow the objections she made to said instructions in the trial court, as shown by her brief. Her objection to said instruction No. 7 was that it "is repetitious of the court's Instruction." Which of the court's instructions was referred to by said objection is not given therein. In her argument she says it was repetitious of the "court's instruction (No. 14)." The only reference in the argument to the court's instruction No. 14 is this: "No. 14 (R295) definition of 'Negligence.'" We are unable to determine from appellant's brief how or in what way said instruction No. 7 was repetitious of the court's instruction No. 14.

The objection of appellant to said appellees' instruction No. 9 was that "it was given in the court's Preliminary Instructions." The argument of appellant discloses no treatment of the court's asserted Preliminary

Instructions nor how or in what way said instruction No. 9 was repetitious of any one, several, or all of said preliminary instructions.

The objection of appellant to said appellees' instruction No. 11 was that "it is repetitious of defendant's tendered instruction No. 7." The only reference in appellant's argument to the latter mentioned instruction is "No. 7 (R.312), (page 25 herein) definition of reasonable care" and that "The defendants were given . . . four instructions regarding reasonable and ordinary care in the inspection of the chair (Nos. 4, 7, 11, 18; pages 24, 25, 26, 28 herein)." No argument or point is made to establish the manner in which said appellees' instruction No. 11 was repetitious of their tendered instruction No. 7. The same condition is found with reference to appellant's treatment of her objections to said appellees' instructions 18 and 19 and we see no useful purpose in further considering the matter in detail. It seems sufficient to say that appellant has demonstrated no error in the giving of any of said latter mentioned objected to instructions nor has she shown any prejudice or harm resulting to her by reason of any asserted repetition of said instructions.

We have nevertheless read the various instructions referred to by appellant and carefully considered them, and each of them, with the said objected to instructions as to the claimed repetitiousness thereof. We find no more repetitiousness in said instructions than is usually present in tort actions where the court undertakes to instruct the jury upon the application of pertinent legal principles to the evidence adduced upon the trial. And we fail to find that the verdict of the jury is in any way traceable to the slight repetition found in a few of the instructions, including some of appellant's own instructions given by the court.

By rhetorical paragraph 7 (c) of her amended complaint, appellant alleged:

> "That defendants, after having placed plaintiff on the chair as aforesaid, failed and neglected to lift the chair in a safe manner in that they lifted from the back and front legs as aforesaid when they should have lifted *directly on the seat of the chair.*"

Appellees' said instruction No. 22 given by the court at the close of all the evidence, withdrew this allegation from consideration by the jury on the ground that "there is no evidence to sustain such allegation." Appellant objected to this instruction because "there is sufficient evidence that this matter should be sent to the jury" and the instruction "removes this question of fact from the jury and evades (apparently 'invades' was meant) the province of the jury." Appellant's argument couples this specification with specification No. 5 of her motion for new trial charging that the court erred in withdrawing said issue from the jury.

In order to properly understand the question here raised, it should be noted that said subparagraph (c) is composed of a negative and a positive averment. The negative is that appellees neglected to lift the chair in a safe way because they lifted the chair from the back and front legs. Rhetorical paragraph 7 (b), which went to the jury as a charge of negligence against the appellees, alleged, in substance, that the appellees improperly attempted to carry appellant in that they attempted to lift the chair "by means of holding to the top of the back of the chair and the front legs, etc." Insofar, therefore, as the negative charge in said subparagraph (c) is concerned, no harm results to appellant by its withdrawal since practically

the same issue went to the jury by said rhetorical paragraph 7 (b).

The reduced question now is whether there was any evidence to support the positive charge that appellees should have lifted the chair by lifting "directly on the seat" thereof. In other words, appellant charged that the safe manner of lifting the chair was by holding (lifting) "directly on the seat" of the chair and that lifting by holding from the back and front legs of the chair was an unsafe manner of lifting appellant. Under this allegation appellant was required to prove two essentials, (1) that in lifting appellant the appellees did not hold directly on the "seat" of the chair and (2) that holding or lifting on the "seat" of the chair was the safe way to lift the chair in order to carry appellant on the chair up the narrow stairway with a sharp, right-angle turn.

The evidence favorable to appellee showed that one of appellees' lifters "took hold of chair above curve and little below on back" and the other lifter grasped the front legs "directly under the seat" of the chair. There was evidence, also, which tended to show that this method was according to the general custom and practice in such cases and the method approved by authorities in First Aid as given in the American Red Cross Manual. Appellant, in urging that there was evidence to sustain the said withdrawn allegation, refers in her argument to quoted questions and answers of three witnesses. One was William Cheek, husband of appellant. He referred to a time when appellees had brought him down on a chair of the same set used for appellant and said that "as near as I remember" "I had one arm around somebody's neck, *I wasn't very conscious*" and they had hold of the chair "underneath" the seat of the chair. It is apparent that the evidence of this witness,

as quoted by appellant, did not show how the chair on which appellant sat was held nor did it tend to prove that holding the "seat" of the chair was the safe manner of lifting it. The next witness referred to by appellant in her argument was the appellant. She referred only to the carrying down of her husband on a chair, apparently the same incident and time he mentioned in his testimony. She said in describing the manner in which appellees carried her husband down the stairs on a chair, that "they," the lifters, "took hold of one each side *underneath* . . . and held *underneath*." Again it is apparent that the evidence of this witness, as quoted by appellant, did not show how the chair on which she sat was held nor that the holding of the "seat" of the chair was the safe manner of lifting it to carry her upstairs. The third, and last, witness quoted from by appellant in her argument, was John Brazzel, the lifter who held the front legs of the chair occupied by appellant. He said that he held the chair "directly *under* the seat"; that that would be a better position than taking hold of the chair at lower angles; and that the "way" should not be "down low but up high." Appellees say, and the statement is not denied by appellant, that this witness had testified that "the front man should grasp the legs of the chair directly underneath the seat and not at the bottom of the front legs" of the chair. Here, the quoted evidence did show that the "front man" held the chair by grasping the front legs thereof "directly underneath the seat" but there is nothing in said testimony to show, or which tends to show, that holding of the "seat" of the chair was the "safe" manner of lifting the chair to carry appellant up the stairway.

Appellant closes her argument by saying that "From the above, it is indisputable that there was evidence on

the question of lifting the chair by the seat, and even though the evidence was conflicting, it should have been the jury's determination, not the court's on the fact question." Appellant's conclusion, it seems to us, does not follow the premise. We fail to find, from the evidence, and the only evidence referred to by appellant in her argument, that there was evidence on the question of lifting the chair, that is, the chair on which appellant was to have been carried, *"on the seat."* There is no evidence whatever that the safe or proper manner of lifting appellant's chair was by lifting "directly on the seat of the chair," as alleged in appellant's complaint. It seems to us that the court properly concluded that there was no evidence to support the allegations of said subparagraph (c) of appellant's complaint. Furthermore, we are inclined to the view that whether or not appellees were guilty of negligence in the way and manner they held and lifted the chair for the purpose of carrying appellant up the stairway was an issue properly alleged and submitted to the jury under the allegations of said subparagraph (b) of said rhetorical paragraph 7 of appellant's amended complaint and that no harm or prejudice resulted to appellant by the withdrawal from the jury of said subparagraph (c) of rhetorical paragraph 7 of said amended complaint. We find no error in the giving of appellees' said instruction No. 22 in the regard claimed by appellant.

Specification No. 4 of appellant's motion for a new trial asserts error in the refusal of the court to give appellant's tendered instructions numbered 5, 6, 9 and 12. Said instruction No. 5 is worded as follows:

"Reasonable care or ordinary care is a relative term. It requires more alertness and vigilance to avoid injury where the danger of injury is great

than where the danger of injury is small. The care required of the defendants at the time of and prior to the occurrence in question was, therefore, proportionate to the known danger of accident as determined from all the evidence."

It is apparent, without discussion, that this instruction is not only nonspecific, ineptly worded, and fraught with confusing and misleading admonishments to the jury, but, also, although general in statement, would have erroneously instructed the jury as to the duty imposed by the law upon the appellees in the performance of their undertaking. That duty, imposed by the law upon appellees, was the duty to exercise reasonable and ordinary care, under all the circumstances, to avoid injury to appellant in the handling and transportation of her by appellees. This instruction, as drawn, would have injected a variation of this duty with a consequent declaration of degrees of negligence. In this state we have no degrees of negligence nor can there be a degree of duty. *Indiana Service Corporation* v. *Schaefer* (1936), 101 Ind. App. 294, 298, 199 N. E. 158. Appellant's instructions numbered 7 and 8, respectively, given by the court, properly informed the jury as to the duty required of appellees by the law in the handling and transportation of appellant. We find no error in the court's refusal to give appellant's said instruction No. 5.

Appellant jointly considers her refused instructions numbered 6 and 9. These instructions read as follows, respectively:

*INSTRUCTION NO. 6*
"I instruct you that you are to determine from the evidence, if any, as questions of fact whether the manner employed by defendants to transport plaintiff, Anna Cheek, from the ambulance cot to her room was or was not negligent; and that the

fact that defendants had transported other patients in similar or like manner without injury does not conclusively prove or disprove the fact, should the evidence show it to be a fact, that the manner was actually *dangerous.*" (Emphasis supplied.)

### INSTRUCTION NO. 9

"Evidence has been introduced showing that defendants and others engaged in the transportation of patients by ambulance used chairs to carry patients upstairs, that such was the usage and custom in the business.

"The fact, if it be a fact, that others had used like methods without harm would not change the character of the method should the evidence show it to be a fact that such method was *dangerous.* Men may and do use unsafe methods without injury, but this does not show that a method proved to be really *dangerous* is not so." (Emphasis supplied.)

Appellant says that one of the main defenses of the appellees was that the use of the chair under the prevailing circumstances conformed to the "generally accepted custom in trade" and that, in view of the "importance of the question," she was entitled to an "instruction regarding the applicable law on the subject." We think likewise. But such is not the question here involved. The present enquiry is whether these instructions, as drawn and tendered, were such as to cause error by the court in refusing to give them. At the time said instructions were tendered there were only two charges of negligence, alleged in appellant's amended complaint, which went to the jury. Other negligence counts in the amended complaint were withdrawn by the court from the consideration of the jury. The two counts of negligence relied upon by appellant and which remained in her amended complaint, were given to the jury by the court

in an unobjected to instruction in the following language:

". . . (1) The lifting of the chair in question while holding to the top of the back of the chair and to the front legs thereof, and

"(2)   Failure to inspect the chair."

Referring now to appellant's said refused instruction No. 6, the immediate question posed by said instruction is what appellant meant by the use of the word "manner." If said word referred, as appellees contend, to whether or not it was negligent for appellees to use a chair, then the instruction covered an issue not before the jury and, therefore, was properly refused by the court. If the word "manner," as used in the instruction, had reference to the way in which the appellees took hold of the chair to lift it while appellant was sitting thereon, it could be said that the instruction down to the semi-colon would have been proper under the first (1) charge of negligence above referred to. However, in the latter interpretation, the remainder of the instruction would have permitted the jury to consider whether such "manner" was "dangerous" without regard to whether it was "negligent." The manner of holding the chair by appellees may be considered by some as dangerous and some of the members of the jury may have considered it dangerous, while others may have considered it not dangerous. But the issue before the jury, under the allegations of appellant's amended complaint, was not whether appellees' manner of holding the chair was "dangerous" but whether such manner of holding the chair was, under all the circumstances disclosed by the evidence, "negligent." The fact that one may do, perform, or execute a dangerous act, and it is so established by the evidence,

does not legally result in the conclusion that such act was negligent. Said instruction, in our opinion, was misleading and confusing, and erroneously set up a legal criterion of dangerousness rather than that of negligence. There was no error in its refusal.

Turning our attention now to appellant's said refused instruction No. 9, we find practically the same situation as was discussed above with reference to said instruction No. 6. The second paragraph of said instruction No. 9 is particularly difficult to understand. There is no mention in it concerning any negligence on the part of appellees. The word "dangerous" appears twice and submits to the jury the duty to search and weigh the evidence to see whether the "method" employed by appellees in using a chair for appellant's conveyance was "dangerous," not whether it was negligent. In this respect the instruction was faulty and set up an erroneous principle of law as did appellant's refused instruction No. 6, above referred to. Further, there is no indication in the instruction as to what is meant by the words "methods" and "method." Does such word have reference to the fact that a chair was used by appellees, as stated in the first paragraph of the instruction, or does it refer to the method, manner or way the chair was grasped or held by appellees in attempting to carry appellant? Logical sequence and idea association in reading the instruction would seem to lead to the conclusion that said word had relation to the fact that appellees used a chair for conveyance purpose as was the "usage and custom in the business." If so, the instruction concerned itself with an issue not before the jury and the instruction, therefore, was properly refused.

We are also unable to conjure the meaning of and the idea sought to be evinced by the statement that the use

of like "methods" without harm by others would not change the "character" of the "method." If it can be assumed that the use of a chair for the purpose of conveying a patient was a "method," by what process of ratiocination do we arrive at the conclusion that the use of such "method" by appellees was a "character" of "method" which would not be changed by the fact that others had used the "method" without harm. We are at loss to comprehend the intended meaning or application of the word "character." We are impressed that this instruction not only declares an erroneous principle of law, as we stated above, but that, also, it is very confusing and misleading. We find no error in its refusal by the court.

Lastly, we consider appellant's charge of error in the refusal of the court to give her tendered instruction No. 12. Said instruction reads as follows:

"The word 'accident' does not have a settled legal definition. In its proper use the term excludes negligence; that is, an accident is an event which occurs without the fault, carelessness, or want of proper observation of the person affected, or which could not have been avoided by the use of that kind and degree of care necessary to the need and in the circumstances in which the plaintiff was placed.

"Therefore, if you find from the evidence in this case that the event which occurred was because of the carelessness or want of reasonable inspection or fault of the defendants and could have been avoided by the use of that kind or degree of care necessary to the need and in the circumstances in which the plaintiff was placed, then you will find that there was not an accident in this particular case."

This instruction undertook to define the word "accident" and to apply such definition to the evidence, or, in other words, to tell the jury under what evidentiary consider-

ations they should find that the "event" which occurred was not an accident. At the outset we must observe that the jury would have been told by this instruction that if the "event which occurred" was because of carelessness or want of reasonable inspection or fault of appellees and could have been avoided by the use of *"that kind or degree of care"* necessary in the circumstances, the jury should find that there was not an accident in the case. Here, again, appellant undertook to have the court instruct the jury that it could consider degrees of negligence. In this regard said instruction was faulty in that it erroneously put to the jury a principle of law not recognized in this state. We have heretofore enunciated upon this same matter in connection with appellant's refused instruction No. 5, and there cited *Indiana Service Corporation* v. *Schaefer, supra.*

We further observe that appellant's instruction No. 11 was given by the court. In that instruction the jury was properly advised as to the meaning of an "accident." In *Kempf* v. *Himsel* (1951), 121 Ind. App. 488, 510, 98 N. E. 2d 200, it was said, apropos here, that "There is no necessity for repetition and duplication of instructions or for restatement of the same proposition in other language." We find no error in the refusal of the court to give appellant's said instruction No. 12.

Appellant has not borne her burden of establishing error by the record and the judgment appealed from must be affirmed.

Judgment affirmed.

Bierly, C. J., Gonas and Smith, JJ., concur.

NOTE.—Reported in 169 N. E. 2d 608.