ROUCH *v.* BISIG AND SAND, ADM.

[No. 569A85. Filed June 8, 1970. Rehearing denied June 27, 1970. Transfer denied November 16, 1970.]

*William K. Garrard, Graham, Rasor & Harris,* of Warsaw, for appellant.

*William E. Borror, Hunt, Suedoff & Wilks,* of Fort Wayne, for Appellees.

SHARP, J.—The Plaintiff-Appellant, Ricky Leroy Rouch, brought this action for personal injury damages against Defendant-Appellees, Viola Bisig and Richard W. Sand, as Administrator of the Estate of Harold Bisig, deceased. The Complaint charged the Appellees with negligence. The case was tried by a jury. At the close of Plaintiff's evidence the trial court directed a verdict for the Defendant-Appellees. The Appellant's Motion for a New Trial was overruled and this appeal resulted. The alleged acts of negligence are as follows:

"(a)   Failure to have signs or warnings of any kind on or about Appellees' pier and that it was dangerous, hazardous and unsafe for persons to dive from the end of the pier;

"(b)   Failure to provide a lifeguard to warn and inform invitees of the shallow water at the end of the pier and the danger of diving therefrom; and

"(c)   Holding out to invitees that Appellees' bathing beach and swimming facilities were safe and suitable for swimming and diving when Appellees knew they were not.

The Appellees asserted the defense of contributory negligence and incurred risk which were denied by Appellant.

We must consider the evidence in the light most favorable to Appellant.

The Appellees owned and operated a business known as Clearwater Resort which was on a lake adjacent to some rental cottages. There was a fence between Clearwater Resort and the cottages, which fence stopped 3 or 4 feet short of the lake and that area between the end of the fence and lake was used by occupants of the rental cottages as an entry way to and from the Resort. The Clearwater Resort consisted of 5 or 6 rental cottages, rental trailer spaces and a snack bar. The snack bar consisted of a restaurant part and a larger screened-in porch. The snack bar sold sandwiches and soft drinks. It contained a juke box and pinball machines on the porch. Between the snack bar and lake there was a sand swimming beach which Appellees maintained as a part of their Resort operation. On the east of the swimming area was a pier owned and maintained by Appellees. This pier consisted of 4 ten foot sections which extended perpendicularly into the lake from the shore. The snack bar was open to the general public. The swimming beach was a part of Appellees' business, used to induce customers to do business with them. No charge was made for the use of the swimming beach. Some people used the swimming facilities who made no purchases. Appellees never refused anyone permission to swim as long as they behaved. The swimming area was in constant use in the summertime. Kids were in the habit of diving into the water from the pier on the east side of the swimming area. The depth of the water off the end of the pier was from 3 to 4½ feet deep. The water in the lake was generally clear, permitting one to see the bottom. When there was swimming activity the water would be stirred up and one could not see the bottom. On nearby property called "Merediths" there was an "L" shaped pier where smaller children swam but older children swam at Appellees. The Meredith pier had a sign on the end "no

swimming or diving". There was evidence that the water was deeper at Appellees' pier than at Meredith's pier. Appellee, Viola Bisig, admitted she knew it was dangerous to dive off the pier because of shallow water.

The incident in question occurred on June 5, 1964, when Appellant was 15 years old. His family had rented one of the Meredith cottages for the summer. His family had been renting a cottage on the lake since 1960. The Appellant and his family were regular customers at Appellees' snack bar. Appellant testified he had gone swimming at Appellees' beach a dozen times in the summer of 1963, and had dived off the Appellees' pier about 5 times. It was common practice for swimmers to dive off Appellees' pier. In 1964, Appellant had not been swimming before June 5, the date of the incident. On June 5, 1964, Appellant and two companions decided to go swimming. The three boys went to Appellees' pier and dived in. The Appellant dived last. The Appellant could not see the bottom of the lake before he dived. He was unaware that one of the pier sections had not yet been put up. The additional pier section would have placed the end of the pier in deeper water. This additional section had been in place when Appellant used the pier in 1963. The Appellee, Viola Bisig, saw Appellant and his companions with their swimming suits on. There were no lifeguards at the swimming area. The Appellees were aware that children made a regular practice of diving off the pier. Appellee, Viola Bisig, testified that she and her husband never allowed anyone to dive from the pier without going out and warning them not to dive because of the shallow water. There was evidence that Appellees made no warnings to the Appellant on the date in question or on previous occasions when they were diving off the pier. In fact, Appellant's mother testified she had been coming to this area since 1960, and had never seen Appellees warn anyone not to dive. There was evidence from one Richard Baker who had installed the four pier sections in 1964, for Appellees, and was a friend of the Appellees, that he had

frequently dived off the pier and no one ever told him not to. Baker also testified that he never saw anyone else warned not to dive. The Appellant's father also testified that it was possible to see the pier and swimming area from the snack bar and that he had been present at the snack bar when persons dived off the pier in the presence of Appellees and no warning was made. In fact, the only evidence of any warnings was from the Appellees themselves. The Appellant testified no one had warned him not to dive from the pier and he had never heard anyone else warned.

In prior years there had been a fifth section of pier which was not in place on June 5, 1964. In previous years there had been a sign at the end of the pier "Danger Shallow Water" in large letters and "no diving" in smaller letters. This sign was not always up during the season and Viola Bisig testified such sign had not been put up yet on June 5, 1964, although the four sections of pier were laid about the middle of May. The Appellant testified that he could not recall ever seeing a sign on the Appellees' pier. There was testimony from both companions of Appellant that no sign was on the pier on June 5, 1964. There were other witnesses who testified to the same effect. One witness, Ruby Overmyer, testified that prior to 1964, she did not see any signs around the swimming area and in 1964, prior to the incident, there were no signs on the pier or on the shore.

We must now proceed to consider the specifications of error which have been argued on this appeal.

In *Rush* v. *Clinger*, 142 Ind. App. 677, 236 N. E. 2d 840, 841, (1968), this court stated:

"There are numerous cases which set forth the legal principles which govern the consideration of a motion for directed verdict and peremptory instruction. These principles were cogently enunciated in Whitaker, Admr. *v.* Borntrager (1954), 233 Ind. 678, 680, 122 N. E. 2d 734, where the court stated that a trial court may properly give the trial jury a peremptory instruction to find for the defendant in the following instances:

" 'When there is a total absence of evidence or legitimate inference in favor of the plaintiff upon an essential issue; or where the evidence is without conflict and is susceptible of but one inference and that inference is in favor of the defendant. (Citations omitted)

" 'When there is some evidence or legitimate inference supporting each material allegation of the complaint, the court will not weigh the conflicting evidence or inferences but will consider only the evidence and inferences that are most favorable to the party against whom the motion for a peremptory verdict is directed. (Citations omitted)

" 'In determining whether a peremptory instruction should be given the court must accept as true all facts which the evidence tends to prove and draw, against the party requesting such instruction, all inferences which the jury might reasonably draw.' "

In their Brief Appellees state:

"Defendants concede that the swimming beach was maintained as a part of the resort business, to induce people to use the cottage and trailer rental facilities and buy refreshments."

On appeal we will consider only the evidence most favorable to the party against whom the Motion for Directed Verdict was made and all reasonable inferences from such evidence. *Layman* v. *Hall Omar Baking Co.*, 138 Ind. App. 673, 213 N. E. 2d 726, rehearing denied 215 N. E. 2d 692 (1966) ; *Monon R. R.* v. *New York Central R. Co.*, 141 Ind. App. 277, 227 N. E. 2d 450 (1967) ; and *Beem* v. *Steel*, 140 Ind. App. 512, 224 N. E. 2d 61 (1967).

The trial court may not weigh the testimony of one witness against conflicting testimony of another nor may it weigh conflicting portions of the testimony of the same witness. *Novak* v. *Chicago & Calumet Transit Co.*, 235 Ind. 489, 135 N. E. 2d 1 (1956) ; *Tuttle* v. *Reid*, 247 Ind. 375, 216 N. E. 2d 34 (1966).

The trial court may direct a verdict for the defendant when there is a total absence of evidence or legitimate infer-

148

ence in favor of the plaintiff upon an essential issue or where the evidence is without conflict and is susceptible of but one inference and that inference is in favor of the defendant. *Whitaker* v. *Borntrager,* 233 Ind. 678, 122 N. E. 2d 734 (1954). See also *Schroer* v. *Edward J. Funk & Sons, Inc.,* 142 Ind. App. 223, 233 N. E. 2d 680, (trans. den. 237 N. E. 2d 247) (1968).

In *Standard Oil Co.* v. *Scoville,* 132 Ind. App. 521, 528, 175 N. E. 2d 711, 714 (1961), this court stated:

> "In cases where the evidence of the material facts is in conflict, it is generally a matter for the jury under appropriate instructions by the court, to determine whether, under the particular circumstances of the case, a status of invitee or licensee is presented."

The evidence and inferences therefrom are considered in the light most favorable to Appellant to permit the jury to find that he had the status of an invitee at the time and place. He was engaged in an activity which the Appellees used to promote their business. He was engaged in it in the same manner as he and others had before—diving off the pier— with the knowledge of Appellees.

The Appellees cite testimony from which they claim the jury could have concluded there was no invitation for the Appellant to dive although he was invited to swim. However, it was reasonably foreseeable that a teen age child would dive as a part of his swimming activities. The evidence is clear that is precisely what they did with Appellees' knowledge and tolerance.

Given his status as an invitee, Appellees owed him a duty to make the area reasonably safe for its intended use.

In *Adams* v. *Schneider,* 71 Ind. App. 249, 259, 124 N. E. 718 (1919), this court stated:

> "It is a fundamental principle that one who owns or controls a place of public entertainment is charged with the *affirmative, positive obligation* to know that such

place is safe for public use. . . He is required to use *care and diligence to keep the place safe* for those in attendance . . . His want of knowledge of defective conditions which by the exercise of reasonable care he might have discovered will not excuse him . . . Those who accept the invitation to attend . . . have a right to assume that a safe place has been prepared for them, and it is not to be expected of them that they make an inspection of the surroundings for the purpose of determining whether or not they are safe." (emphasis added)

In *Pittsburgh C. C. & St. L. Ry. Co.* v. *Simons,* 76 N. E. 883, 885, transfer denied 168 Ind. 333, 79 N. E. 911 (1906), this court also stated:

". . . the proof must therefore show, not only that the conduct of appellant was negligent, but also that it was in violation of some duty that appellant owed to appellee. . . . This duty does not exist where the injured party is a trespasser, or intruder, nor if he is a licensee without invitation, express or implied. . . . The only duty the owner of the premises owes to a trespasser, or a 'bare licensee', is not to willfully or wantonly injure him, but to use reasonable care to avoid injuring him after his danger is discovered. While the terms 'mere licensee' or 'bare licensee' are often used, and no distinction made between such a person and a trespasser, yet *we do not understand it to be the rule that under no circumstances will the licensor owe any duty to the licensee other than not to willfully or wantonly injure him, but to use reasonable care to avoid injuring him after his danger is discovered. . . . But if a person comes upon the premises through the invitation, express or implied, of the owner or occupant, such owner or occupant assumes the obligation of exercising reasonable care for his safety. Whether a person so coming upon the premises would be called a licensee is immaterial,* for the reason that in any case whether there is a right of action in such injured person depends upon whether or not he was at the time rightfully upon the premises. 'Where a person has a license,' said the Court in *Indiana, etc. R. Co.* v. *Barnhorst,* 115 Ind. 399, 16 N. E. 121, "to go upon the grounds or the inclosure of another, he takes the premises as he finds them, and accepts whatever perils he incurs in the use of such license. But *when the owner or occupant, by enticement, allurement, or inducement, whether express or implied, causes another to come upon his lands, he then*

*assumes the obligation of providing for the safety and protection of the person so coming,* and for any breach of duty in that respect such owner or occupant becomes liable for any injury which may result to the person so caused to come onto his lands. The enticement, allurement, or inducement, as the case may be, must be the equivalent of an express or implied invitation. Mere acquiescence in the use of one's lands by another is not sufficient. Such *an implied invitation may be inferred from some act or line of conduct,* or from some designation or dedication. . . .

"The question here is whether it can be said, from all the circumstances and surroundings, that appellee was at the place where injured by invitation. It is said that 'the principal appears to be that *invitation is inferred where there is a common interest or mutual advantage,* while a license is inferred where the object is the mere pleasure or benefit of the person using it.' But *the conclusion does not follow from this statement that such inference arises only where there is a common interest or mutual advantage. An invitation may be inferred or implied from some act or conduct of the owner* of the premises, although there may be in the use of the premises no common interest or mutual advantage. Whether in *any given case* there are acts sufficient to constitute an implied invitation or inducement *must depend upon the particular circumstances and surroundings,* and cannot be measured by any absolute rule." (emphasis added)

In affirming the decision of this court on transfer, our Supreme Court stated:

" . . . if the owner or occupant of real estate goes beyond consent or passive acquiescence, and by positive acts or inducements entices others to come upon or cross his premises at a particular place, he assumes towards the persons moved by his implied invitation the duty of exercising ordinary care *to construct and keep* the place reasonably safe for the purpose." (emphasis added) (79 N. E. at 913, 168 Ind. at 341)

See also, *Hollowell* v. *Greenfield,* 216 N. E. 2d 537 (1966), and *Hickey* v. *Shoemaker,* 132 Ind. App. 136, 167 N. E. 2d 487 (1960); *Silvestro* v. *Walz,* 222 Ind. 163, 51 N. E. 2d 629 (1944).

The Appellees owed Appellant a duty to warn him of any dangerous condition which they actively created in the pier, especially in view of their knowledge that children customarily used this pier for diving and in view of the fact that this pier was located next to a designated swimming area. The jury could have found that Appellees breached such duty to warn. When there is more than one inference to be drawn from the facts, the question of negligence is one for the jury. *Robertson Bros. Dept. Store v. Stanley,* 228 Ind. 372, 90 N. E. 2d 809 (1950). It might be emphasized in the *Robertson Bros.* case the plaintiff who fell on a slippery floor of defendant's store had not yet made a purchase although she intended to do so.

The standard of what constitutes reasonable care with regard to making the place of invitation safe properly includes consideration of the age, propensities and experience of the invitees. *Cleveland C.C. and St. L. Ry. Co.* v. *Means,* 59 Ind. App. 383, 104 N. E. 785, reh. den. 108 N. E. 375 (1914).

In this case the defendants were aware of the customary and regular practice of teenage children of diving from their pier and that such was dangerous due to shallow water. Despite this knowledge defendants placed their pier next to the beach and made no warning to this Plaintiff or others. There is ample evidence from which the jury could have inferred that Defendants breached their duty to Plaintiff.

The Appellees' contentions that Appellant was guilty of contributory negligence and incurred risk as a matter of law will be considered together. Strictly speaking "assumed risk" is a separate affirmative defense upon contract while incurred risk is a species of contributory negligence in Indiana. *Cleveland etc. Railroad Co.* v. *Lynn,* 177 Ind. 311, 95 N. E. 577, reh. den. 98 N. E. 67 (1912), and *Emhardt* v. *Perry Stadium Inc.,* 113 Ind. App. 197, 46 N. E. 2d 704 (1943).

Diving from their pier was dangerous. However, the fact that such act was dangerous does not *as a matter of law* legally result in the conclusion that such act was negligent. *Cheek* v. *Jordan,* 131 Ind. App. 127, 169 N. E. 2d 608 (1960).

The general rule of negligence law in Indiana is that an actor, until he has notice to the contrary, has the right to assume that other persons will exercise due care toward him. An invitee has a right to assume the place will be reasonably safe for his reception. *Lincoln Operating Co.* v. *Gillis,* 232 Ind. 551, 114 N. E. 2d 873 (1953) and *Robertson Bros. Dept. Store* v. *Stanley, supra.*

Knowledge and appreciation of peril are essential elements of contributory negligence. *Riesbeck Drug Co.* v. *Wray,* 111 Ind. App. 467, 39 N. E. 2d 776 (1942). In this regard the Appellant testified that he did not consider it perilous when he dove.

Recently this court stated in *Rocoff* v. *Lancella,* 145 Ind. App. 440, 251 N. E. 2d 582, 586 (1969) :

> "Both our Supreme Court and this Court have, in many cases, stated the rule that the question of contributory negligence is one of fact for the jury to determine when the evidence on point is in dispute, or is conflicting, or is such that reasonable men could fairly draw different inferences from undisputed facts.
>
> It is only in cases where the facts are undisputed and but a single inference can be drawn therefrom that this Court can say, as a matter of law, that the course of conduct shown constitutes contributory negligence." (citations omitted)

The Appellees rely heavily on *Kalicki* v. *Beacon Bowl, Inc.,* 143 Ind. App. 132, 238 N. E. 2d 673 (1968), which simply held that an invitor will not be liable for the hazards created by *natural* accumulation of snow. The critical factor in *Kalicki* was the *natural* accumulation as compared with the creation of an artificial condition as the Appellees did here.

In this case there were warning signs on adjacent piers and none on Appellees' pier. This could certainly create the

inference that swimming *and diving* were not dangerous at Appellees' beach and pier.

The standard of care which the Plaintiff was bound to exercise in regard to his own contributory negligence is reasonable care for a person of like age, intelligence and experience. *Indianapolis Railways, Inc.* v. *Williams*, 115 Ind. App. 383, 59 N. E. 2d 586 (1944). Because this standard involves consideration of like age, experience and knowledge, it is generally a fact question for the jury. *Cole* v. *Searfoss*, 49 Ind. App. 334, 97 N. E. 345 (1912).

The evidence in this case is not undisputed and does not lead to a single inference in favor of the Appellees. The evidence does not lead to the single inference that Appellant was guilty of contributory negligence and incurred risk as a matter of law. The evidence is susceptible to more than one inference.

The Appellees' Brief makes an excellent jury argument with reference to the issues in this case. We believe that these issues should have been submitted to the jury for its decision.

The trial court erred in directing a verdict at the close of Plaintiff-Appellant's evidence and such ruling should be and hereby is reversed. Costs v. Appellees.

Hoffman, P.J., Pfaff, J. and White, J., Concur.

NOTE.—Reported in 258 N. E. 2d 883.