Terry L. GATES, Defendant-Appellant,

v.

Toni ROSENOGLE, Plaintiff-Appellee.

No. 3–782A164.

Court of Appeals of Indiana,
Third District.

Aug. 25, 1983.

⚖146

---

Robert J. Palmer, John J. Lorber, May, Oberfell, Helling, Lorber, Campiti & Konopa, South Bend, for defendant-appellant.

Michael W. Cotter, Robert L. Stephan, South Bend, for plaintiff-appellee.

GARRARD, Judge.

Terry Gates appeals an award of $50,000 in damages. The award was the product of a motorcycle accident on May 15, 1979. On that afternoon, Toni Rosenogle and her boyfriend had four friends over for a cookout. One of these friends, Charlie Coy, left the cookout and returned with a quantity of beer. Rosenogle did not drink any of it. Coy, another friend named Michael Querry, and others did. Rosenogle saw Querry have several bottles of the beer.

The party broke up after several hours. Rosenogle went with one of the guests to visit the guest's mother. The two women ended the visit and proceeded to a local bar, where they encountered Querry and Coy. Rosenogle, who does not drink alcohol, waited outside while the other three went inside. She assumed they had drinks inside. The other three emerged after a while, and the four left together, with the women riding as passengers on Querry's and Coy's motorcycles. They stopped at another bar, which Coy and Querry entered. The two men remained there for about twenty minutes, and Rosenogle assumed, again, that they were drinking. When Coy and Querry came out, Rosenogle changed motorcycles and became Querry's passenger. She changed because she was alarmed at Coy's erratic operation of his motorcycle. The four proceeded for several blocks before turning south onto Franklin Street.

Terry Gates lived on Franklin Street, south of where Coy and Querry turned onto it. Gates owned a van, which he parked on the street in front of his house. Franklin is a relatively narrow street, with space enough only for two lanes of traffic and for parking along one side. Gates' van was parked along the east side adjacent to the northbound lane. Querry and Coy were traveling south in the remaining lane. As Querry and Coy approached, Gates got into his van. He started it, it stalled and he re-started it. After the stall, Gates turned off his headlights and had not turned them back on when he heard a thump. The thump was the sound of Querry's motorcycle colliding with Gates' van.

On March 17, 1980 Rosenogle filed a complaint against Gates for damages for injuries sustained in the collision. The basis of the complaint was that the collision was produced by Gates' negligence in pulling out into the path of Querry's motorcycle. Trial was held in February 1982 and the

jury found for Rosenogle and assessed damages of $50,000. Gates appeals.

Gates raises five issues. Because three of those issues involve the instructions given to the jury, and involve the same standard of review, we shall treat those issues as one. The resulting issues are:

1. Was it an abuse of discretion for the trial court to refuse to allow Gates to give his opinion as to the speed of Querry's motorcycle prior to impact?

2. Was it an abuse of discretion for the trial court to exclude Querry's deposition statement that he had taken a pill earlier in the evening on the date of the accident?

3. Did the trial court's instructions erroneously prevent the jury from considering the issues of incurred risk, contributory negligence and proximate cause?

### I.

Gates argues that it was error not to allow him to give his opinion as to the speed of Querry's motorcycle. The premise is that Gates was qualified to assess the speed of the motorcycle from the sound of its engine. Gates does not offer himself as an expert in the area. He does argue that a non-expert familiar with a particular vehicle is qualified to give his opinion of its speed based only upon the sound it makes. Gates' asserted familiarity is based upon having owned and ridden motorcycles and having observed them racing along Franklin Street. Gates admits that he is unfamiliar with the particular model of motorcycle Querry was riding, but he contends that his knowledge is sufficient to make his opinion that Querry's motorcycle was traveling 45 m.p.h. admissible.

We first consider Gates' contention that a layman's opinion as to the speed of of a vehicle is admissible when that opinion is based upon the sound the vehicle makes as it travels. Estimates of the speed of a motor vehicle are not matters which are the exclusive province of experts. 8 Am.Jur.2d *Automobiles and Highway Traffic,* Section 1071. Laymen who have "the means or

opportunity of observation" are competent to testify to the speed of the vehicle which they observed. *Id.* Whether a witness who did not actually see a vehicle traveling, but only heard it as it travelled, had sufficient opportunity of observation is an issue upon which the courts have disagreed. 8 Am. Jur.2d *Automobiles and Highway Traffic,* Section 1073; Annot., 33 A.L.R.3d, 1045.

Gates' primary reliance is upon *Kuhn v. Stephenson* (1928), 87 Ind.App. 157, 161 N.E. 384. *Kuhn* was a suit for damages for the consequences of an automobile accident. On appeal, Kuhn challenged the admission of the testimony of a witness who had heard, but not seen, one of the vehicles and who concluded, from the "sound of the motor," that it had been traveling 45 m.p.h. The appellate court held there was no error in admitting the testimony. One reason for the holding was the unique qualifications of the witness: he was an automobile mechanic with twelve years' experience familiar with the particular model of vehicle involved. Another reason was that, although the court felt the testimony was distinctly inferior to testimony based upon visual and aural observation, the court concluded that testimony "based solely upon the sound of the motor . . . could have had but little weight with the jury." *Id.* at 160, 161 N.E. 384.

While *Kuhn* supports the proposition that speed estimates based upon motor sound are not necessarily inadmissible, the observer in *Kuhn* was extraordinarily qualified to make such an estimate. The level of qualification was a product not only of the witness' years of experience but also of the nature of that experience. Experience in repairing engines reasonably permits an inference of familiarity with engine sounds, and their implications.

It was the presence of similar expertise which produced the holding in *Pierson v. Frederickson* (1968), 102 N.J.Super. 156, 245 A.2d 524, the other bulwark of Gates' argument. In *Pierson* the New Jersey Appellate Court held that it was not error to permit a witness "with experiental qualifi-

cations for judging speed based on auditory perception ... greater than those of the ordinary layman" to give his opinion of an automobile's speed. 245 A.2d at 527. The witness was an electronics engineer with 30 years' experience researching the use of sound waves to measure movement of persons and vehicles. *Id.* at 526.[1]

■ The general rule invests the trial court with the exercise of sound discretion in the admission or exclusion of marginally relevant evidence which has a potential for prejudice. *See, e.g., Chrysler Corporation v. Alumbaugh* (1976), 168 Ind.App. 363, 342 N.E.2d 908, *modified* 168 Ind.App. 363, 348 N.E.2d 654. The rule finds much expression in the area of opinion testimony. *See, e.g., Linton-Summit Coal Co. v. Hutchinson* (1953), 232 Ind. 369, 373, 111 N.E.2d 819; *O'Toole v. Tudor* (1910), 175 Ind. 227, 231, 93 N.E. 276; *Northern Ind. Pub. Svc. Co. v. Otis* (1969), 145 Ind.App. 159, 250 N.E.2d 378, 404. Accordingly, we will not reverse the trial court in the absence of an abuse of discretion, which requires a showing that the ruling was clearly against the logic and

effect of the circumstances. *Linton-Summit Coal Co., supra.*

■ *Kuhn, supra,* and *Pierson, supra,* must be read to stand for the proposition that upon the facts (qualifications) there present, it was not an abuse of discretion to *admit* the opinion.

On the previously recited facts before us concerning both Gates' qualifications and the specific nature of the opinion sought, we cannot say it was an abuse of discretion to *exclude* the opinion. *Compare, Johnson v. Wilson* (Ind.App.1936), 200 N.E. 729, 730, which while superseded by transfer on other grounds, 211 Ind. 51, 5 N.E.2d 533, noted that "opinions as to the speed of a moving object may be given when the witness shows proper knowledge, but to base such judgment on the noise made without actual observation should not be permitted."

## II.

Gates next argues that the trial court abused its discretion by refusing to admit Querry's deposition statement that he had taken a diet pill on the night of the acci-

---

1. The *Pierson* court also described the residual category to which laymen without comparable qualifications are consigned: "[I]t would not be improper for the average lay witness ... to give a general characterization of the vehicle's speed, i.e., *slow* or *fast*, based solely on auditory perception." 245 A.2d at 528. This is a generally accepted standard. Annot., 33 A.L. R.3ᴅ 1405, Section 4. But since Gates sought to testify as to Querry's speed in terms of specific miles per hour, it does not apply here. Gates is held to the more rigorous standard.

The remaining cases cited by Gates fall into two categories, Indiana cases involving estimates of train speeds and out of state cases on automobile speeds. Of the three he cites in the former category, one is explicitly concerned with testimony from visual observation. *Louisville, New Albany & Chicago Railway Co. v. Jones* (1886), 108 Ind. 551, 565, 9 N.E. 476. The two others involve situations in which speed was assessed either from a combination of visual and aural observation, *Louisville, New Albany & Chicago Railway Co. v. Hendricks* (1891), 128 Ind. 462, 463, 28 N.E. 58, or from aural observation in combination with other factors, *Lake Erie & Western Railway v. Moore* (1912), 51 Ind.App. 110, 123, 97 N.E. 203. None deal explicitly with estimates of speed based upon the sound of a vehicle as it travels.

Nor do the non-Indiana cases lend more support to Gates' argument. Three of those cases held that a witness' opinion of speed, based upon the sound a vehicle makes, is admissible when phrased in terms such as "slow" or "fast." *Rone v. Miller* (1975), 257 Ark. 791, 520 S.W.2d 268; *Thomas v. Dad's Root Beer & Canada Dry Bottling Co.* (1960), 225 Or. 166, 356 P.2d 418, *reh. denied* 225 Or. 172, 357 P.2d 418; *Marshall v. Mullin* (1958), 212 Or. 421, 320 P.2d 258. This is, as indicated earlier, a proposition established in Indiana but not relevant to Gates' desire to estimate Querry's speed specifically at 45 m.p.h. n. 1, *supra*. Gates' final case allowed testimony that an engine sounded like it was running at a high rate of speed. *Heath v. Joyce* (1974), 114 N.H. 620, 326 A.2d 260. Whatever else *Heath* may be, for Gates it is anticlimactic. One could draw an analogy from *Heath* to Gates' comments that Querry's engine was making the distinctive humming sound known as "winding out." The only significance of "winding out" was that it suggested that the cycle was in third gear. Since Querry admitted he was in third gear, *Heath*'s impact is less than dramatic.

dent. After Querry made it clear that he would claim the privilege against self incrimination and would not testify about the matter at trial, Gates sought to introduce the deposition statement. In the deposition Querry had said that he took a diet pill, or "speed," at about 7:00 o'clock in the evening of May 15, 1979. The trial court ruled the statement inadmissible. Gates urges this was an abuse of discretion because the evidence was essential to his defenses that Rosenogle incurred the risk, was contributorily negligent and that Querry's actions were the *sole* proximate cause of the injury.

The use of depositions at trial is governed by Indiana Rules of Procedure, Trial Rule 32. Specifically, TR 32(A)(3) deals with the depositions of non-party witnesses and provides:

"The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

(a) that the witness is dead; or

(b) that the witness is outside the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or

(c) that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment; or

(d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or

(e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used; or

(f) upon agreement of the parties."

In addition, as a general constraint upon the use of depositions TR 32(A) limits admission to such parts of the deposition as are otherwise admissible under the rules of evidence applied as though the witness were then present and testifying, and to use against any party who was present or represented at the taking of the deposition.

Gates relies upon TR 32(A)(3)(e) for his claim that the deposition should have been admitted. We have held that admissibility under this subparagraph of the rule is committed to the trial court's discretion. *Cooper v. Indiana Gas & Water Co.* (1977), 173 Ind.App. 47, 362 N.E.2d 191.

■ We find in the instant case that Gates has failed to demonstrate any abuse of discretion in the court's ruling.

It is elementary that a party offering a deposition into evidence bears the burden of establishing its admissibility. In the record before us it appears that neither Rosenogle nor her attorney at the time were present at the taking of Querry's deposition. The court could not ascertain the reason for that absence from Rosenogle because the attorney that had represented her at the time had died in the interim and his associate had ceased to practice in the area, leaving as the court stated, "a blank wall." Gates offered no proof that the deposition was being taken pursuant to written stipulation or proper notice. *See* TR 29, 30. Thus, the deposition could have been found inadmissible for Gates' failure to establish compliance with TR 32(A).

■ Citing an annotation in 43 A.L. R.3D 1413 Gates argues in part that the statement should have been admitted as a prior statement against interest by a witness claiming the privilege against self incrimination at trial. Assuming arguendo that Indiana would permit such evidence as an exception to the hearsay rule where required in the interest of justice, the admission of the evidence would be a matter within the discretion of the trial court. Here it appears that in addition to Rosenogle being unrepresented by counsel at the deposition, Querry was without counsel. During the questioning, Querry indicated he did not understand why he was being questioned about his personal life and said that he felt he "better get a lawyer."

Furthermore, when a party attempts to secure an exercise of the trial court's discretion in the "interest of justice" whether under TR 32(A)(3)(e) or simply to admit evidence that might be excluded by operation of the ordinary rules of evidence, it is

pertinent both to exercising the court's discretion and reviewing that exercise for abuse to examine the critical nature of the proffered evidence.[2]

Here neither the evidence nor the offer of proof gave any indication that Rosenogle knew or should have known about the ingestion of any pills. In the absence of such knowledge on her part,[3] whether or not Querry had ingested a pill had little to do with Gates' defenses of incurred risk, *Sullivan v. Baylor* (1975), 163 Ind.App. 600, 325 N.E.2d 475, 477, or contributory negligence, *Rouch v. Bisig* (1970), 147 Ind.App. 142, 258 N.E.2d 883. Finally, as discussed *infra,* the essential consideration in Gates' argument that Querry was the sole proximate cause of the collision is dependent not upon the extent of Querry's negligence, but upon the absence of Gates' negligence as a causative factor. Therefore, the proffered evidence was not pertinent to this "defense" either.

In view of the foregoing we can find no abuse of discretion in the court's exclusion of the deposition statement.

### III.

In its final instructions the court took away from the jury the issue of incurred risk. Gates asserts this was error. The question is whether, viewed from the perspective favoring Gates, there was enough probative evidence that a reasonable jury might have found Rosenogle incurred the risk of her injury. *McKeown v. Calusa* (1977), 172 Ind.App. 1, 359 N.E.2d 550; *see also Chesapeake & O. Ry. Co. v. Burk* (1961), 241 Ind. 683, 686, 172 N.E.2d 670, *reh. den.* 241 Ind. 683, 175 N.E.2d 137.

Incurred risk, to the extent that it represents a defense distinct from contributory negligence,[4] demands a subjective analysis into Rosenogle's actual knowledge and voluntary acceptance of the risk. It involves a mental state of "venturousness" on the part of the actor. *Gerrish v. Brewer* (1979), Ind.App., 398 N.E.2d 1298, 1300; *The Kroger Co. v. Haun* (1978), 177 Ind. App. 403, 379 N.E.2d 1004.

Gates' claim of incurred risk was premised upon Rosenogle's agreeing to ride with Querry when she knew he had been drinking beer.

The evidence introduced at trial disclosed the following. Querry attended the cookout at Rosenogle's home, arriving possibly as early as 3:30 p.m. or as late as 5:30 p.m. While there he ate dinner and may have consumed three or four beers. The cookout broke up around 6:30 p.m. or 7:00 p.m. An hour to an hour and a half later Rosenogle again encountered Querry and Charlie Coy at Marion's Hide-A-Way. Querry, Coy and Rosenogle's companion, Patti Littrell, went inside while Rosenogle, who was underage and did not drink, remained outside. Rosenogle assumed that Querry had something to drink while he was there but did not know.[5] The four then left Marion's Hide-A-Way, with Rosenogle riding as a passenger on Coy's motorcycle. They went to Joe's House of Spirits and stayed for fifteen or twenty minutes, and Querry may have had "a beer" there. At that juncture Rosenogle became Querry's passenger because she was afraid of the way Coy drove his motorcycle. She did not think Querry was intoxicated. She testified that Querry did not seem to be speeding, weaving or acting carelessly in his operation of his motorcycle. In addition, two pedestrians in the vicinity of the collision testified that they observed the motorcycle shortly before the collision and that it was not swerving or across the center line and appeared to be traveling within the speed limit at 25 to 30 m.p.h.

---

**2.** Interestingly, in arguing that Querry's statement was not really self incriminating, Gates asserts that there was absolutely no evidence of the actual chemical composition of the pill.

**3.** *I.e.,* as distinct from whatever knowledge she possessed about Querry's manner of operating the motorcycle and/or his drinking of intoxicants.

**4.** *See, e.g., Rouch v. Bisig, supra,* 147 Ind.App. at 151, 258 N.E.2d at 888.

**5.** Querry was, himself, seriously injured in the collision and although he did testify at trial his evidence was that he could not recall the specifics of the events preceding the collision.

Brian Gould stated that it was going slow enough that he recognized Querry in the dark as it passed.

Of course, Gates had the burden of proof by a preponderance of the evidence. TR 9.1(A). From our recital of the evidence we believe the trial court correctly concluded that the evidence of Rosenogle's actual knowledge and voluntary acceptance of the risk was so slight that a reasonable jury would necessarily have had to indulge in mere speculation or conjecture to have found she incurred the risk of her injuries. It follows that the court correctly took that issue from the jury. *McKeown, supra.*

### IV.

Gates next argues that the court by modifying some of its preliminary instructions before repeating them as final instructions and by refusing defendant's tendered instruction No. 8, in effect, precluded the jury from considering Gates' defense of contributory negligence.

As to the assertion that the court erred in modifying its own instructions, it is sufficient to point out that these instructions as delivered to the jury correctly stated the law applicable to the issues and the evidence. If Gates desired additional instruction, it was necessary that he tender such instructions to preserve any error. *Thornton v. Pender* (1978), 268 Ind. 540, 377 N.E.2d 613.

The court refused defendant's tendered instruction No. 8 which would have advised the jury that a passenger in a motor vehicle must exercise reasonable care for his own safety, and if he does not the failure may constitute contributory negligence if it proximately caused or contributed to cause his injuries.

A simple straightforward analysis of the tendered instruction and its implications is precluded by two factors in the procedural posture in which the instruction was refused.

The court did not give, and no party tendered, any instruction that would have told the jury if Rosenogle was guilty of contributory negligence she could not recover. In that context the tendered instruction would have been confusing to the jury and, in addition, its refusal as to Gates would appear to be harmless.

In his argument Gates urges the duty of a passenger to use reasonable care and argues that Rosenogle had a duty to maintain a "reasonable lookout" and give warning of obstacles in the road ahead. We do not agree with Gates' broad statement of the rule.

While a passenger has a duty to exercise reasonable care, our Supreme Court has expressly recognized that where the passenger has no control over the management of the vehicle, he or she may ordinarily rely upon the assumption that the driver will exercise proper care and caution and need not keep a lookout in order to satisfy that duty. *Lindley v. Sink* (1940), 218 Ind. 1, 18, 30 N.E.2d 456. *See also Kavanagh v. Butorac* (1966), 140 Ind.App. 139, 221 N.E.2d 824, and *Horton v. Sater* (1966), 140 Ind.App. 1, 221 N.E.2d 452 applying the same rule. These cases involved automobiles. Here we deal with a motorcycle where the passenger is riding on the saddle behind the driver. She testified that because of Querry's size and her small stature she could not look over his shoulders and see the road ahead. There was no evidence of her awareness of any conduct on Querry's part prior to the collision which could logically have warned a reasonable person to maintain a lookout. Under this evidence the court could have determined that as a matter of law she had no duty to maintain a lookout.

However, the court gave, with some modification, another instruction tendered by Gates concerning Rosenogle's possible duty as a passenger to maintain a lookout and give warning if a reasonably prudent person would have done so under the circumstances. Of course, it is not error to refuse an instruction adequately covered by instructions given. *Brook v. St. John's Hickey Mem. Hosp.* (1978), 269 Ind. 270, 380 N.E.2d 72.

Thus, while we are left with some uncertainty as to why the trial court refused defendant's instruction No. 8, we do conclude that no harmful error resulted therefrom.

### V.

Finally, Gates contends the court erred in refusing the following instruction:

"If you should find by a fair preponderance of all the evidence that the sole proximate cause of the accident between the defendant's van and the motorcycle in which the plaintiff was riding was the negligent operation of the motorcycle at the time and place of the occurrence complained of, then your verdict should be for the defendant and against the plaintiff."

 We agree with Gates that the instruction is a correct statement of the law. We disagree with his assertion that it, in effect, represents a separate or special defense which requires the giving of an instruction. It is not and does not. It is merely an implication of the requirement that in order to recover from the defendant, the plaintiff must prove by a preponderance of the evidence that the defendant in question was guilty of a breach of duty (negligence) which proximately caused plaintiff's injuries. If the defendant was not guilty of such an act of negligence, then the plaintiff was not entitled to recover from him regardless of whether anyone else was negligent. The court so instructed the jury through defendant's tendered instruction No. 1 and the court's other instructions concerning plaintiff's burden of proof. Accordingly, there was no error in refusing defendant's tendered instruction No. 3. *Brook, supra; Hahn v. Ford Motor Co.* (1982), Ind.App., 434 N.E.2d 943.

Affirmed.

HOFFMAN, P.J., and STATON, J., concur.